KEMNITZER, BARRON, & KRIEG, LLP
BRYAN KEMNITZER          Bar No. 066401
ELLIOT CONN              Bar No. 279920
445 Bush St., 6th Floor
San Francisco, CA  94108
Telephone: (415) 632-1900
bryan@kbklegal.com
elliot@kbklegal.com

EAST BAY COMMUNITY LAW CENTER
Sharon Djemal            Bar No. 208461
3130 Shattuck Ave.
Berkeley, CA 94705
Telephone: (510) 269-6612
Facsimile: (510) 849-1536
sdjemal@ebclc.org

Attorneys for Plaintiff Winifred Cabiness and the putative class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WINIFRED CABINESS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EDUCATIONAL FINANCIAL SOLUTIONS, LLC DBA CAMPUS DEBT SOLUTIONS,<br><br>Defendant. | **Case No. 3:16-cv-01109-JST**<br><br><u>CLASS ACTION</u><br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.***<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff WINIFRED CABINESS ("Ms. CABINESS"), on behalf of herself and all others similarly situated, through her attorneys, alleges on personal information and on information and belief based upon, *inter alia*, the investigation made by and through her attorneys, as follows.

## **INTRODUCTION**

1.      Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. (the "TCPA") in response to widespread complaints about unsolicited and unauthorized telephone

-1-

calls made to non-consenting consumers through the use of automatic telephone dialing systems ("ATDS") or by use of artificial or prerecorded voice. Sponsoring Senator Ernest "Fritz" Hollings called such calls "the scourge of modern civilization." 137 Cong. Rec. 30,821-30,822 (1991). Congress found that unwanted automated calls were a "nuisance and an invasion of privacy, regardless of the type of call" and that banning such calls was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§2 (10-13) (Dec. 20, 1991), codified at 47 U.S.C. §227. To this end, the TCPA prohibits any person from making any call (other than a call made for emergency purposes or with the prior express consent of the called party) to any cellular telephone using any ATDS, or using artificial or prerecorded voice.

2.    This case concerns a particularly intrusive practice: namely, Defendant EDUCATIONAL FINANCIAL SERVICES, LLC dba CAMPUS DEBT SOLUTIONS ("CDS"), gained control of a telephone number – (800) 848-0979 – that was previously used by the United States Department of Education ("DoEd") (the "Number"). This number is listed as a DoEd on both DoEd forms and numerous websites.

3.    CDS acquired the Number as part of a systemic and ongoing course of conduct in order to obtain borrowers' cellular telephone numbers and call them in order to mislead borrowers into paying CDS for otherwise free federal student loan forgiveness and repayment programs. Upon borrowers calling the Number on their cellular telephones, CDS made false and misleading statements to trick or intentionally mislead the borrowers into believing that they were speaking to the DoEd. CDS made statements that CDS knew to be misleading, untrue, or made with reckless indifference as to their truth or falsity.

4.    As part of its policies and procedures, once Plaintiff and class members called the Number, CDS would forward Plaintiff and class members' cellular telephone numbers, obtained through false pretenses, into the CDS internal database. CDS would then bombard their cellular telephones with calls in order to continue to induce Plaintiff and the class members into paying for CDS's services.

5.    CDS places these calls using an automated telephone dialing system ("ATDS"),

1  and/or by using an artificial or prerecorded voice.  Because Plaintiff and the class believed that

2  they were calling the DoEd and not CDS, they did not consent to receive calls from CDS.

3        6.      CDS's unwanted calls caused Plaintiff and the class the very harm that Congress

4  sought to prevent – a "nuisance and invasion of privacy."  The calls wasted Plaintiff and the

5  class's time and money, as they trespassed on and interfered with Plaintiff and the class's rights

6  and interest in their cellular telephones.  The calls were an intentional intrusion upon their solitude

7  or seclusion, disrupting their peace and quiet; the calls tied up their phone lines, trespassed on

8  Plaintiff and the class's telecommunications equipment for their own purposes, prevented use of

9  the phones for other calls during the time of the intrusion, and used up the limited space on their

10  voice mail. The calls further demanded a return call, which was alarming or confounding, and

11  further wasted the recipients' time.

12        7.      Plaintiff brings this action individually and on behalf of a class of all persons

13  similarly situated, as more particularly defined below.

14  **PARTIES**

15        8.      Plaintiff WINIFRED CABINESS is, and at all times relevant was, a natural person

16  and a citizen of California, residing in Contra Costa County, California.

17        9.      Defendant EDUCATIONAL FINANCIAL SOLUTIONS, LLC dba CAMPUS

18  DEBT SOLUTIONS, is a corporation organized and existing under the laws of the State of

19  Delaware, with its principal place of business in the State of Florida, and doing business in the

20  State of California.

21  **JURISDICTION**

22        10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

23  1331 as the claims alleged herein arise under the Telephone Consumer Protection Act, 47 U.S.C.

24  § 277. *Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740 (2012).  This Court also has jurisdiction

25  pursuant to 28 U.S.C. § 1332(d)(2) because this matter is a class action in which class members

26  are citizens of a different state than that of Defendant and the amount in controversy (including

27  attorneys' fees), upon information and belief, exceeds $5,000,000.00, exclusive of interest and

28

-3-

First Amended Complaint for Damages and Equitable Relief
*Winifred Cabiness v. Educational Financial Solutions, LLC,* Case No. 3:16-cv-01109-JST

1    costs.

2    11.    Declaratory relief is available under 28 U.S.C. §2201. Injunctive relief is available

3    under 47 U.S.C. §227(b)(3)(A).

4    **VENUE**

5    12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant

6    conducts business in this District, and the actions giving rise to this suit occurred within this

7    District.

8    **FCC RULINGS AND OTHER LEGAL AUTHORITY IMPACTING CLAIMS
     BROUGHT UNDER THE TCPA**

9

10   **A.    The FCC Has Broadly Interpreted the TCPA to Protect Consumers**

11   13.    Congress has vested the Federal Communications Commission ("FCC") with the

12   authority to issue interpretations, rules and regulations to implement the TCPA, and the FCC has

13   done so in a series of Orders broadly interpreting the protections the TCPA provides to consumers.

14   47 U.S.C. §227(b)(2).   According to findings by the FCC, such calls as those alleged herein are

15   prohibited because, as Congress found, automated or prerecorded telephone calls are a greater

16   nuisance and invasion of privacy, and such calls can be costly and inconvenient.  The FCC also

17   recognized that wireless customers are charged for incoming calls whether they pay in advance

18   or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer*

19   *Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

20   14.    In enacting the TCPA, Congress intended to give consumers a choice as to how

21   creditors and telemarketers may call them, and made specific findings that "[t]echnologies that

22   might allow consumers to avoid receiving such calls are not universally available, are costly, are

23   unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102–

24   243, §11. Toward this end, Congress found that:

25       Banning such automated or prerecorded telephone calls to the home, except when
         the receiving party consents to receiving the call or when such calls are necessary
26       in an emergency situation affecting the health and safety of the consumer, is the
         only effective means of protecting telephone consumers from this nuisance and
27       privacy invasion[.]

28

-4-

*Id.* at §12. Congress also specifically found that:

> [T]he evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call[.]

*Id.* at §§12-13.

**B.    The FCC Has Broadly Interpreted What Constitutes an ATDS**

15.    The FCC has ruled that the "capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers" without human intervention in the calling process is the hallmark of an ATDS. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 2008*, CG Docket No. 02-278, FCC 07-232 (1/4/08) ¶13; *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2003 WL 21517583, 18 F.C.C.R. 14014, ¶132 (Fed. Commc'n Cmm'n July 3, 2003) ("2003 TCPA Order").

16.    Following Congress' directive, the FCC has expanded the definition of ATDS to include predictive dialers. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, 18 FCC Rcd 14014, 14092-93 (June 26, 2003) at ¶133.

17.    Moreover "capacity" includes systems that include hardware and software that can be paired to function together to act as an ATDS, even where the equipment would not be able to do so separately. *In re Matters of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, CG Docket No. 02-278, WC Docket No. 07-135, FCC 15-72 (July 10, 2015) ("2015 TCPA Order"), ¶10.

18.    With respect to whether a device is considered an "automatic telephone dialing system" for purposes of the TCPA, the Ninth Circuit has specifically noted that "a system need not actually store, produce, or call randomly or sequentially generated numbers, it need only have the *capacity* to do it." *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946 (9th Cir. 2009) (emphasis added).

19.    The FCC also ruled, "We also reject [the] argument that the Commission should

-5-

1  adopt a 'human intervention' test by clarifying that an autodialer is not an autodialer unless it has

2  the capacity to dial numbers without human intervention. Because the Commission has previously

3  rejected a restrictive interpretation of autodialer in favor of one based on a piece of equipment's

4  potential ability, we find that [the] argument amounts to a simple variation on the 'present ability'

5  arguments we reject above." 2015 TCPA Order at ¶20.

6      20.      Enforcement of the TCPA is subject to a four-year statute of limitations pursuant

7  to 28 U.S.C. §1658.

8                          **STATEMENT OF FACTS**

9  **A.    CDS's Acquisition and Use of the DoEd Number**

10     21.      Sometime prior to May 2015, Defendant CDS gained control of a telephone

11 number – (800) 848-0979 – that CDS knew had belonged to the United States Department of

12 Education ("DoEd") (the "Number"). The DoEd had previously used the Number as a call center

13 for federally backed student loans, and it had listed the Number on both DoEd forms and websites.

14 CDS does not advertise or otherwise publish the (800) 848-0979 Number. The (800) 848-0979

15 Number is only published as a DoEd number.

16     22.      Beginning on an exact date unknown to Plaintiff, but at least within four (4) years

17 prior to the filing of the complaint and continuing to the present, CDS has engaged in a systematic,

18 ongoing course of conduct with the intent to obtain moneys from Plaintiff and the class by false

19 or fraudulent pretenses, willful misrepresentations, false promises, and willful avoidance.

20     23.      CDS used the acquired Number to trick or intentionally mislead consumers into

21 calling the Number. Statements made during the course of consumer-initiated phone calls to the

22 Number were known by CDS to be misleading, untrue, or made with reckless indifference as to

23 their truth or falsity with the intent to defraud.

24     24.      Believing that the Number belonged to the DoEd, consumers called the Number

25 and thus provided CDS with the consumers' telephone numbers. Upon a consumer calling the

26 Number, CDS entered the calling consumer's cellular telephone number into CDS's database.

27 CDS then used the numbers in database to place calls to consumers' cellular telephones using an

28

-6-

1  ATDS in order to continue to induce consumers into paying money to CDS.

2       25.    False and misleading statements made in the telephone solicitations were made

3  with the intent to obtain cellular telephone numbers and other personal information from

4  consumers and to obtain money from said consumers by tricking or intentionally misleading them

5  into believing that they were calling a DoEd telephone number and speaking with a DoEd agent.

6  In doing so, CDS misrepresented, directly and by implication, its affiliation with the Federal

7  Government and the DoEd.  The ultimate purpose of this systematic, ongoing course of conduct

8  was to trick or intentionally mislead consumers into paying CDS for otherwise free federal student

9  loan forgiveness and payment programs.

10  **B.    CDS's Calls to Plaintiff**

11       26.    In mid-May 2015, Ms. CABINESS attempted to contact the DoEd regarding her

12  student loans. She found the (800) 848-0979 Number listed on one of her old DoEd account

13  statements and she called it, unaware that the Number had been acquired by CDS.

14       27.    On the call with CDS, the CDS representative willfully avoided disclosing his

15  identity and employer in order to trick or intentionally mislead Ms. CABINESS into believing

16  that she was speaking with a representative of the DoEd.

17       28.    The CDS representative requested and obtained Ms. CABINESS' social security

18  number, her full name, and her login credentials for the National Student Loan Data System – the

19  DoEd's website for borrowers to access their loan information. In addition, the representative ask

20  Ms. CABINESS for authorization to withdraw fees directly from her bank account.  However,

21  Ms. CABINESS did not have that information with her at the time, and told the representative

22  that she would call back the next day.

23       29.    Ms. CABINESS attempted to call what she believed to be the DoED back the next

24  day.  She connected to a message system that identified the company, not as DoED, but as Campus

25  Debt Solutions.  Ms. CABINESS immediately ended the call and did not call back again.

26       30.    Over the next several days, an employee of CDS named Daniel Benitez repeatedly

27  called Ms. CABINESS on her cellular telephone, (xxx) xxx-0913, from numbers belong to CDS,

28  and tried to pressure her to enter into a loan repayment plan through CDS.

-7-

First Amended Complaint for Damages and Equitable Relief
*Winifred Cabiness v. Educational Financial Solutions, LLC,* Case No. 3:16-cv-01109-JST

31.    With the assistance of the East Bay Community Law Center ("EBCLC"), Ms. CABINESS sent an e-mail to CDS, addressed to DBenitez@campusdebt.com, asking to be placed on CDS' do not call list. She stated in the e-mail: "I am not interested in any services with your company, Campus Debt Solutions. Please destroy any information you have collected from me and cease all contact immediately." (**Exhibit A**)

32.    On June 23, 2015, Ms. CABINESS received two calls from (510) 270-2836 – a number that belongs to CDS, that she did not recognize. She did not answer the calls.

33.    Continuing through the new year, CDS called Ms. CABINESS's cell phone repeatedly from the (510) 270-2836 number, often several times in the same day. These repeated calls to Ms. CABINESS, particularly during the holidays, caused her a large amount of stress and anxiety. She did not answer the calls.  As of February 2016, Ms. CABINESS was still receiving calls from CDS to her cell phone.

**C.    CDS's Use of an ATDS**

34.    CDS used equipment that has or had the capacity to store or produce telephone numbers to be called, using random or sequential number generator and to dial such numbers, also known as an "automatic telephone dialing system," as defined by 47 U.S.C. §227(a)(1), to place calls and/or text messages to the cellular telephone number belonging to Plaintiff.

35.    CDS indicates on its website (www.campusdebt.com), and specifically on its privacy policy page (www.campusdebt.com/about/privacy-policy) that it uses an Automatic Telephone Dialing System to place both phone calls and text messages.  On its main page it sets forth:



(http://www.campusdebt.com/ /)

36.    And the CDS terms and conditions set forth:

-8-

By subscribing to Campus Debt you consent to receive electronic communications from Campus Debt in electronic form, via email, Short Message Service ("SMS Service") or wireless internet ("WAP Service") and may be sent via automatic telephone dialing systems which may use pre-recorded messages (http://www.campusdebt.com/about/terms-conditions/)

37.     CDS employed some or all of these practices and these systems when placing calls to the cellular telephone numbers belonging to Plaintiff and the putative class members.  Any human participation on the part of CDS was incidental to the harvesting and storage of Plaintiff's cell phone numbers and placement of the calls, and wholly immaterial to the capacity of CDS's calling system.

38.     On February 11, 2016, Ms. CABINESS answered a call from (510) 270-2836.  The phone rang for several seconds before she answered.  Upon answering, Ms. CABINESS heard only silence for several seconds, and then Ms. CABINESS hung up the phone.

39.     Ms. CABINESS is informed and believes, and on the basis of such information and belief alleges that her experience with the call from CDS – answering the phone but hearing only silence or "dead air" – indicates that the call was placed using a predictive dialing system. A predictive dialing system allows a single human operator to make calls to multiple consumers at the same time. Whichever consumer answers the phone first will be connected to the human operator. All further consumers that answer the phone will hear only silence.

40.     CDS's calls to Plaintiff and the proposed class, by means of the use of an CDS or pre-recorded calling system, without their consent, and for the purpose of collecting on debt they themselves did not owe, is an intrusion on seclusion that is highly offensive, and would be highly offensive to any reasonable person.

## INJURY IN FACT

41.     Plaintiff and the class members had a legally protected privacy interest arising out of the TCPA to be free from unwanted calls and prerecorded messages to their cellular phones.

42.     That privacy interest barred entities like CDS from intruding upon the Plaintiff's and the class members' privacy.  Specifically, the TCPA barred CDS from calling these individuals on their cellular phones using restricted technology, unless CDS first obtained express

consent.

43.     Plaintiff and the class members received calls directed at them by CDS.

44.     Those calls violated the individual rights of the Plaintiff and the class members.

45.     As such, the harms to the Plaintiff and class members arose directly from the violation of their respective rights by CDS.

46.     These invasions of privacy caused frustration and annoyance by the Plaintiff and class members, who had not consented to these intrusions caused by CDS.  Plaintiff and class members have suffered an injury in fact.

## CLASS ACTION ALLEGATIONS

47.     It is CDS's policy and practice, in the course of business, to place calls using an ATDS and/or prerecorded voice to individuals whose cellular telephone numbers CDS obtained through false pretenses due to such individual calling the (800) 848-0979 Number using their cellular telephones.

48.     Therefore, Plaintiff brings this class action on behalf of herself and on behalf of all other persons similarly situated as members of the proposed class, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3).  This action satisfied the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

49.     The proposed class consists of:

All persons in the United States:

  (a)     who placed one or more call using his/her cellular telephone to (800) 848-0979, following CDS's acquisition of the (800) 848-0979 number;

  (b)     to whose cellular telephone CDS subsequently placed one or more non-emergency calls;

  (c)     using an automatic telephone dialing system, or artificial or prerecorded voice;

  (d)     within the four (4) years prior to the filing of this complaint.

Excluded from this class are all persons who provided CDS with his/her cellular

-10-

First Amended Complaint for Damages and Equitable Relief
*Winifred Cabiness v. Educational Financial Solutions, LLC,* Case No. 3:16-cv-01109-JST

telephone number in a manner other than by calling the (800) 848-0979 number.

50.    The members of the class are so numerous that joinder of all claims would be impracticable.  While the exact number of class members is unknown to Plaintiff at this time, Plaintiff alleges that there are more than 40 members of the class.

51.    There are questions of law and fact common to the class, which predominate over any questions affecting individual class members.  The predominant common questions include:

> (a)    Whether CDS used an ATDS, or an artificial or prerecorded voice within the meaning of the TCPA and applicable FCC regulations, to place calls to the class;

> (b)    Whether the class members gave consent to be called by CDS, since they did not knowingly provided CDS with their cellular telephone number when they called what they believed to be a Department of Education number; and

> (c)    Damages, including whether the violations were negligent, willful or knowing.

52.    Plaintiff's claims are typical of the claims of the other members of the class. CDS's conduct has caused Plaintiff and members of the class to sustain the same or substantially similar injuries and damages.  CDS's conduct has caused each member of the class to suffer a nuisance or invasion of privacy, intrusion upon their seclusion and use of the cell phones for which they paid a subscriber fee.  CDS has acted in a uniform manner with respect to Plaintiff and the other class members.  Plaintiff have no interests antagonistic to the interests of the other members of the class.

53.    Plaintiff will fairly and adequately represent and protect the interests of the members of the class.  Plaintiff is a member of the class and does not have any conflict of interest with other class members.  Plaintiff has retained and is represented by competent counsel who are experienced in complex class action litigation and claims involving violations of the TCPA.

54.    The nature of this action makes a class action the superior and appropriate

-11-

procedure to afford relief for the wrongs alleged herein. There will be no difficulty in the management of this class action. The identity of the putative class, as well as the fact and time of calls made to putative class members, is ascertainable from electronic databases within CDS's custody or control. Individualized litigation presents the potential for inconsistent or contradictory judgments. A class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

<h3 style="text-align:center"><u>FIRST CAUSE OF ACTION</u></h3>

<h3 style="text-align:center"><u>(Telephone Consumer Protection Act, 47 U.S.C. § 227, <em>et seq.</em>)</u></h3>

55.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

56.    The TCPA provides that it is unlawful for any person to make a non-emergency call using an automatic telephone dialing system or an artificial or recorded voice to any cellular phone service without prior express consent of the called party.

57.    CDS violated the TCPA by impermissibly placing calls to the cellular telephones of Plaintiff and the members of the class using an ATDS or an artificial or prerecorded voice without their prior express consent.

58.    Plaintiff and the members of the class have a legally protected interest in being free from the intrusion of autodialed calls and calls using an artificial or prerecorded voice. These unauthorized and offensive calls harmed Plaintiff and the members of the proposed class, because they caused Plaintiff and the members of the proposed class to suffer a nuisance and an invasion of privacy, all as more particularly described above. Such harm was fairly traceable to CDS's violations of the TCPA.

59.    CDS has policies, practices or procedures of placing calls to cell phones using an ATDS or artificial or prerecorded voice, without the prior consent of the called parties.

60.    CDS's violations were negligent, or alternatively, they were willful or knowing. 47 U.S.C. §312(f)(1).

//

-12-

First Amended Complaint for Damages and Equitable Relief
*Winifred Cabiness v. Educational Financial Solutions, LLC,* Case No. 3:16-cv-01109-JST

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A.    Certify this matter as a class action under Rule 23(b)(2) and 23(b)(3);

B.    Appoint the named plaintiff as the class representative;

C.    Appoint the undersigned as Class Counsel for the classes to be represented;

D.    Award, statutory damages of $500 per violation determined to be negligent;

E.    Award statutory damages of $1,500 per violation determined to be willful;

F.    Grant a declaration that CDS's equipment and messages are regulated by the TCPA;

G.    Enter an order enjoining CDS from further violations of the TCPA; namely prohibiting CDS from using the (800) 848-0979 Number and prohibiting CDS placing non-emergency calls using an automatic telephone dialing system or an artificial or prerecorded voice, pursuant to 47 U.S.C. § 227(b)(3)(A);

H.    Grant costs of suit incurred herein;

I.    Award reasonable attorneys' fees as part of a common fund, if any; and

J.    Provide such other or further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury.

Dated:  September 23, 2016              KEMNITZER, BARRON & KRIEG, LLP


                          By:    /s/ Bryan Kemnitzer
                                 BRYAN KEMNITZER
                                 ELLIOT CONN
                                 Attorneys for Plaintiff Winifred Cabiness, and the
                                 putative class

                                 EAST BAY COMMUNITY LAW CENTER


                          By:    /s/ Sharon Djemal
                                 SHARON DJEMAL
                                 Attorneys for Plaintiff Winifred Cabiness, and the
                                 putative class

-13-