KEMNITZER, BARRON, & KRIEG, LLP
BRYAN KEMNITZER        Bar No. 066401
ELLIOT CONN            Bar No. 279920
445 Bush St., 6th Floor
San Francisco, CA  94108
Telephone: (415) 632-1900
bryan@kbklegal.com
elliot@kbklegal.com

EAST BAY COMMUNITY LAW CENTER
Sharon Djemal          Bar No. 208461
3130 Shattuck Ave.
Berkeley, CA 94705
Telephone: (510) 269-6612
Facsimile: (510) 849-1536
sdjemal@ebclc.org

Attorneys for Plaintiff Winifred Cabiness and the putative class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WINIFRED CABINESS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EDUCATIONAL FINANCIAL SOLUTIONS, LLC dba CAMPUS DEBT SOLUTIONS, BETA INVESTMENT GROUP, INC.; EQUITY ACQUISITIONS, LLC; VENTURETECH SOLUTIONS, LLC; DEBT.COM, LLC; and HOWARD DVORKIN<br><br>Defendants. | **Case No. 3:16-cv-01109-JST**<br><br><u>CLASS ACTION</u><br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.***<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff WINIFRED CABINESS ("Ms. CABINESS"), on behalf of herself and all

others similarly situated, through her attorneys, alleges on personal information and on

-1-

1   information and belief based upon, *inter alia*, the investigation made by and through her

2   attorneys, as follows.

3   **<u>INTRODUCTION</u>**

4   1.      Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. §227 *et*

5   *seq.* (the "TCPA") in response to widespread complaints about unsolicited and unauthorized

6   telephone calls made to non-consenting consumers through the use of automatic telephone

7   dialing systems ("ATDS") or by use of artificial or prerecorded voice.  Sponsoring Senator

8   Ernest "Fritz" Hollings called such calls "the scourge of modern civilization." 137 Cong. Rec.

9   30,821-30,822 (1991).  Congress found that unwanted automated calls were a "nuisance and an

10  invasion of privacy, regardless of the type of call" and that banning such calls was "the only

11  effective means of protecting telephone consumers from this nuisance and privacy invasion."

12  Pub. L. No. 102-243, §§2 (10-13) (Dec. 20, 1991), codified at 47 U.S.C. §227.  To this end, the

13  TCPA prohibits any person from making any call (other than a call made for emergency

14  purposes or with the prior express consent of the called party) to any cellular telephone using

15  any ATDS, or using artificial or prerecorded voice.

16  2.      This case concerns a particularly intrusive practice: namely, Defendant

17  EDUCATIONAL FINANCIAL SERVICES, LLC dba CAMPUS DEBT SOLUTIONS and its

18  related entities BETA INVESTMENT GROUP, INC.; EQUITY ACQUISITIONS, LLC;

19  VENTURETECH SOLUTIONS, LLC; DEBT.COM, LLC; and HOWARD DVORKIN

20  (collectively "CDS"), paid "leads" to forward calls directed to telephone number (800) 848-

21  0979, a telephone number that was previously used by the United States Department of

22  Education ("DoEd") (the "Number") and other telephone numbers.  The Number is listed as a

23  DoEd on both DoEd forms and numerous websites.

24  3.      CDS paid to receive calls from the Number and other telephone numbers as part

25  of a systemic and ongoing course of conduct in order to obtain borrowers' cellular telephone

26  numbers and call them in order to induce and mislead borrowers into paying CDS for otherwise

27  free federal student loan forgiveness and repayment programs.  Upon borrowers calling the

28  Number and other telephone numbers, on their cellular telephones, CDS made false and

-2-

Second Amended Complaint for Damages and Equitable Relief
*Winifred Cabiness v. Educational Financial Solutions, LLC,* Case No. 3:16-cv-01109-JST

misleading statements to trick or intentionally mislead the borrowers into believing that they were speaking to the DoEd.  CDS made statements that CDS knew to be misleading, untrue, or made with reckless indifference as to their truth or falsity.

4.      As part of its policies and procedures, once Plaintiff and class members called the Number or other phones numbers, CDS' system would place Plaintiff and class members' cellular telephone numbers, obtained through false pretenses, into the CDS internal database and into dialer campaigns. CDS' automated telephone dialing system, including but not limited to the Presence Administrator Manual Suite, Version 9.2, would then bombard their cellular telephones with telephone solicitation calls in order to continue to induce Plaintiff and the class members into paying for CDS' services.

5.      CDS places these telephone solicitation calls using an automated telephone dialing system ("ATDS"), and/or by using an artificial or prerecorded voice. CDS placed these telephone solicitation calls without obtaining prior express written consent to place such phone calls.

6.      CDS' unwanted calls caused Plaintiff and the class the very harm that Congress sought to prevent – a "nuisance and invasion of privacy."  The calls wasted Plaintiff and the class's time and money, as they trespassed on and interfered with Plaintiff and the class's rights and interest in their cellular telephones.  The calls were an intentional intrusion upon their solitude or seclusion, disrupting their peace and quiet; the calls tied up their phone lines, trespassed on Plaintiff and the class's telecommunications equipment for their own purposes, prevented use of the phones for other calls during the time of the intrusion, and used up the limited space on their voice mail. The calls further demanded a return call, which was alarming or confounding, and further wasted the recipients' time.

7.      Plaintiff brings this action individually and on behalf of a class of all persons similarly situated, as more particularly defined below.

**PARTIES**

8.      Plaintiff WINIFRED CABINESS is, and at all times relevant was, a natural

-3-

person and a citizen of California, residing in Contra Costa County, California.

9.     Defendant EDUCATIONAL FINANCIAL SOLUTIONS, LLC dba CAMPUS DEBT SOLUTIONS, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Florida, address 6360 NW 5th Way, Suite 103, Fort Lauderdale, FL 33309, and doing business in the State of California.

10.     Defendant BETA INVESTMENT GROUP, INC., is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in the State of Florida, address 6360 NW 5th Way, Suite 302, Fort Lauderdale, FL 33309, and doing business in the State of California.  BETA INVESTMENT GROUP, INC., which is owned and controlled by HOWARD DVORKIN, has an ownership interest in and is the managing entity for EDUCATIONAL FINANCIAL SOLUTIONS, LLC dba CAMPUS DEBT SOLUTIONS.

11.     Defendant EQUITY ACQUISITIONS, LLC, is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in the State of Florida, address 6360 NW 5th Way, Suite 302, Fort Lauderdale, FL 33309, and doing business in the State of California.  EQUITY ACQUISITIONS, LLC, along with BETA INVESTMENT GROUP, INC., has an ownership interest in EDUCATIONAL FINANCIAL SOLUTIONS, LLC dba CAMPUS DEBT SOLUTIONS.

12.     Defendant VENTURETECH SOLUTIONS, LLC, is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in the State of Florida, address 6360 NW 5th Way, Suite 302, Fort Lauderdale, FL 33309, and doing business in the State of California.  VENTURETECH SOLUTIONS, LLC is owned and controlled by HOWARD DVORKIN.   VENTURETECH SOLUTIONS, LLC operates and maintains the ATDS used to call Plaintiff and the class.

13.     Defendant DEBT.COM, LLC, is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in the State of Florida, mailing address 6360 NW 5th Way, Suite 302, Fort Lauderdale, FL 33309, and doing business in the State of California.  DEBT.COM, LLC sold all "leads" to EDUCATIONAL FINANCIAL SOLUTIONS, LLC dba CAMPUS DEBT SOLUTIONS at grossly inflated and commercially

-4-

1  unreasonable prices.

2     14.   Defendant HOWARD DVORKIN is and at all times relevant was, a natural

3  person and a citizen of Florida, residing in Broward County, Florida.  HOWARD DVORKIN, at

4  all times relevant, was the president of BETA INVESTMENT GROUP, INC., which is the

5  managing entity for EDUCATIONAL FINANCIAL SOLUTIONS, LLC dba CAMPUS DEBT

6  SOLUTIONS.  The ownership of EDUCATIONAL FINANCIAL SOLUTIONS, LLC dba

7  CAMPUS DEBT SOLUTIONS, BETA INVESTMENT GROUP, INC., EQUITY

8  ACQUISITIONS, LLC, VENTURETECH SOLUTIONS, LLC, and DEBT.COM, LLC, and

9  each of them, rests in the ownership of one equity owner through various corporate entities, and

10 conduits, but reside in and with HOWARD DVORKIN.

11 **DEFENDANTS' SINGLE BUSINESS ENTERPRISE**

12    15.   EDUCATIONAL FINANCIAL SERVICES, LLC dba CAMPUS DEBT

13 SOLUTIONS, BETA INVESTMENT GROUP, INC., EQUITY ACQUISITIONS, LLC,

14 VENTURETECH SOLUTIONS, LLC, and DEBT.COM, LLC are part of a single business

15 enterprise controlled by Defendant HOWARD DVORKIN that were all involved in the placing

16 of telephone solicitation calls to Plaintiff and the class.  All named Defendants are controlled by

17 HOWARD DVORKIN as follows:

18    16.   EDUCATIONAL FINANCIAL SOLUTIONS, LLC dba CAMPUS DEBT

19 SOLUTIONS is owned by BETA INVESTMENT GROUP, INC. and EQUITY

20 ACQUISITIONS, LLC.  EDUCATIONAL FINANCIAL SOLUTIONS, LLC dba CAMPUS

21 DEBT SOLUTIONS is managed by BETA INVESTMENT GROUP, INC.

22    17.   EQUITY ACQUISITIONS, LLC is managed and owned by BETA

23 INVESTMENT GROUP, INC.

24    18.   BETA INVESTMENT GROUP, INC is wholly owned and controlled by

25 HOWARD DVORKIN.

26    19.   VENTURETECH SOLUTIONS, LLC is managed and owned by HOWARD

27 DVORKIN.

28    20.   EDUCATIONAL FINANCIAL SERVICES, LLC dba CAMPUS DEBT

-5-

1 SOLUTIONS, BETA INVESTMENT GROUP, INC., EQUITY ACQUISITIONS, LLC,

2 VENTURETECH SOLUTIONS, LLC, and DEBT.COM, LLC all share a mailing address of

3 6360 NW 5th Way, Fort Lauderdale, FL 33309.

4      21.    Prior to the filing of the First Amended Class Action Complaint in this action,

5 CDS maintained an active website, claiming that:

## WE MAJOR IN SAVING MONEY

### Student loan consolidation can mean lower monthly payments today.

**Consolidate your federal loans in one easy payment every month**

**Cut your total monthly payments – if you're really struggling you may pay nothing**

**End tax garnishment & prevent wage garnishment**

**Identify programs to forgive all or part of your remaining balances**

16      22.    Following the filing of the Class Action Complaint on September 23, 2016, CDS

17 updated its website to show:

**Campus Debt Solutions is no longer enrolling new clients.**
**The company is fully committed to serving our existing clients to the completion of the program.**
**Existing clients may email us or call our offices with any further questions or concerns.**

20      23.    Defendant HOWARD DVORKIN has testified that EDUCATIONAL

21 FINANCIAL SOLUTIONS, LLC dba CAMPUS DEBT SOLUTIONS is in "wind-down mode"

22 and will close shortly.

23                    **AGENCY AND ALTER EGO**

24      24.    At all times mentioned herein each Defendant, shared a common ownership and

25 common business operation. Each Defendant has an identical street address and overlapping

26 owners, officers, and directors.

27      25.    At all times mentioned herein, each Defendant was the agent or employee of

28

each of the other Defendants and was acting within the course and scope of such agency or employment. The Defendants are jointly and severally liable to Plaintiff and the class.

26.     The ownership of EDUCATIONAL FINANCIAL SOLUTIONS, LLC dba CAMPUS DEBT SOLUTIONS, BETA INVESTMENT GROUP, INC., EQUITY ACQUISITIONS, LLC, VENTURETECH SOLUTIONS, LLC, and DEBT.COM, LLC, rests in the ownership of one equity owner through various corporate entities, and conduits, but reside entirely in and with owner HOWARD DVORKIN.

27.     Defendants are not only influenced by each other and their owner, but there is such a unity of interest and ownership that the individuality of each person and corporation has ceased, and the facts are such that the adherence to the fiction of the separate existence of the corporations would sanction fraud or promote injustice.

28.     EDUCATIONAL FINANCIAL SOLUTIONS, LLC dba CAMPUS DEBT SOLUTIONS, BETA INVESTMENT GROUP, INC., EQUITY ACQUISITIONS, LLC, VENTURETECH SOLUTIONS, LLC, and DEBT.COM, LLC are corporations so closely connected that they are on and the same entity, and represent a joint enterprise in which the entities and HOWARD DVORKIN are jointly and severally liable for the debts of the others.

29.     There is such a unity of interest and ownership between EDUCATIONAL FINANCIAL SOLUTIONS, LLC dba CAMPUS DEBT SOLUTIONS, BETA INVESTMENT GROUP, INC., EQUITY ACQUISITIONS, LLC, VENTURETECH SOLUTIONS, LLC, DEBT.COM, LLC, and HOWARD DVORKIN that the separate personalities of the corporations and individuals no longer exist. If the acts are treated as those of EDUCATIONAL FINANCIAL SOLUTIONS, LLC dba CAMPUS DEBT SOLUTIONS alone, an inequitable result will follow.

30.     The Court should lift the corporate veil between EDUCATIONAL FINANCIAL SOLUTIONS, LLC dba CAMPUS DEBT SOLUTIONS, BETA INVESTMENT GROUP, INC., EQUITY ACQUISITIONS, LLC, VENTURETECH SOLUTIONS, LLC, and DEBT.COM, LLC impose liability upon Defendants as these entities, along with HOWARD

-7-

DVORKIN, are one and the same, constitute a seamless web, and represent one entity. Otherwise, Plaintiff and the class will suffer a severe injustice at the hands of the Defendants who profit from their corporate shell games.

## JURISDICTION

31.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as the claims alleged herein arise under the Telephone Consumer Protection Act, 47 U.S.C. § 277. *Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740 (2012).  This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because this matter is a class action in which class members are citizens of a different state than that of Defendant and the amount in controversy (including attorneys' fees), upon information and belief, exceeds $5,000,000.00, exclusive of interest and costs.

32.     Declaratory relief is available under 28 U.S.C. §2201.  Injunctive relief is available under 47 U.S.C. §227(b)(3)(A).

## VENUE

33.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant conducts business in this District, and the actions giving rise to this suit occurred within this District.

## FCC RULINGS AND OTHER LEGAL AUTHORITY IMPACTING CLAIMS BROUGHT UNDER THE TCPA

**A.      The FCC Has Broadly Interpreted the TCPA to Protect Consumers**

34.     Congress has vested the Federal Communications Commission ("FCC") with the authority to issue interpretations, rules and regulations to implement the TCPA, and the FCC has done so in a series of Orders broadly interpreting the protections the TCPA provides to consumers. 47 U.S.C. §227(b)(2).   According to findings by the FCC, such calls as those alleged herein are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls

-8-

Second Amended Complaint for Damages and Equitable Relief
*Winifred Cabiness v. Educational Financial Solutions, LLC,* Case No. 3:16-cv-01109-JST

whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

35.     In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102–243, §11. Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion[.]

*Id.* at §12. Congress also specifically found that:

> [T]he evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call[.]

*Id.* at §§12-13.

**B.     The FCC Has Broadly Interpreted What Constitutes an ATDS**

36.     The FCC has ruled that the "capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers" without human intervention in the calling process is the hallmark of an ATDS.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 2008*, CG Docket No. 02-278, FCC 07-232 (1/4/08) ¶13; *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2003 WL 21517583, 18 F.C.C.R. 14014, ¶132 (Fed. Commc'n Cmm'n July 3, 2003) ("2003 TCPA Order").

37.     Following Congress' directive, the FCC has expanded the definition of ATDS to include predictive dialers. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, 18 FCC Rcd 14014, 14092-93 (June 26, 2003) at ¶133.

-9-

38.     Moreover "capacity" includes systems that include hardware and software that can be paired to function together to act as an ATDS, even where the equipment would not be able to do so separately.  *In re Matters of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, CG Docket No. 02-278, WC Docket No. 07-135, FCC 15-72 (July 10, 2015) ("2015 TCPA Order"), ¶10.

39.     With respect to whether a device is considered an "automatic telephone dialing system" for purposes of the TCPA, the Ninth Circuit has specifically noted that "a system need not actually store, produce, or call randomly or sequentially generated numbers, it need only have the *capacity* to do it."  *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946 (9th Cir. 2009) (emphasis added).

40.     The FCC also ruled, "We also reject [the] argument that the Commission should adopt a 'human intervention' test by clarifying that an autodialer is not an autodialer unless it has the capacity to dial numbers without human intervention. Because the Commission has previously rejected a restrictive interpretation of autodialer in favor of one based on a piece of equipment's potential ability, we find that [the] argument amounts to a simple variation on the 'present ability' arguments we reject above."  2015 TCPA Order at ¶20.

41.     Enforcement of the TCPA is subject to a four-year statute of limitations pursuant to 28 U.S.C. §1658.

## STATEMENT OF FACTS

**A.     CDS' Acquisition and Use of the DoEd Number and Other Telephone Numbers**

42.     Sometime prior to May 2015, Defendant CDS contracted to receive calls directed to telephone number (800) 848-0979, a telephone number that had belonged to the United States Department of Education ("DoEd") (the "Number").  The DoEd had previously used the Number as a call center for federally backed student loans, and it had listed the Number on both DoEd forms and websites.  CDS does not advertise or otherwise publish the (800) 848-0979 Number.  The (800) 848-0979 Number is only published as a DoEd number.

43.     CDS has also contracted to receive calls directed to other telephone numbers and

1   controls other telephone numbers.

2       44.    Beginning on an exact date unknown to Plaintiff, but at least within four (4)

3   years prior to the filing of the complaint and continuing to the present, CDS has engaged in a

4   systematic, ongoing course of conduct with the intent to obtain moneys from Plaintiff and the

5   class by false or fraudulent pretenses, willful misrepresentations, false promises, and willful

6   avoidance.

7       45.    CDS used the acquired Number and other telephone numbers to trick or

8   intentionally mislead consumers into calling the Number.  Statements made during the course of

9   consumer-initiated phone calls to the Number telephone numbers were known by CDS to be

10  misleading, untrue, or made with reckless indifference as to their truth or falsity with the intent

11  to defraud.

12      46.    Believing that the Number and other telephone numbers belonged to the DoEd or

13  other third parties, consumers called the Number and other telephone numbers and thus

14  provided CDS with the consumers' telephone numbers.  Upon a consumer calling the Number

15  and other telephone numbers, and the call being directed to CDS, CDS entered the calling

16  consumer's cellular telephone number into CDS' database.  CDS then used the numbers in its

17  database to generate dialer campaigns that placed telephone solicitation calls to consumers'

18  cellular telephones using an ATDS, including but not limited to, Presence Administrator

19  Manual Suite, Version 9.2, in order to continue to induce consumers into paying money to CDS.

20      47.    False and misleading statements made in the subsequent telephone solicitations

21  were made with the intent to obtain cellular telephone numbers and other personal information

22  from consumers and to obtain money from consumers by tricking or intentionally misleading

23  them into believing that they were calling a DoEd telephone number and speaking with a DoEd

24  agent.  In doing so, CDS misrepresented, directly and by implication, its affiliation with the

25  Federal Government and the DoEd.  The ultimate purpose of this systematic, ongoing course of

26  conduct was to trick or intentionally mislead consumers into paying CDS for otherwise free

27  federal student loan forgiveness and payment programs.

28  //

-11-

Second Amended Complaint for Damages and Equitable Relief
*Winifred Cabiness v. Educational Financial Solutions, LLC,* Case No. 3:16-cv-01109-JST

**B.    CDS' Calls to Plaintiff**

48.    In mid-May 2015, Ms. CABINESS attempted to contact the DoEd regarding her student loans. She found the (800) 848-0979 Number listed on one of her old DoEd account statements and she called it, unaware that she was being forwarded to CDS through a third-party, Palo Media, that forwarded leads to CDS.

49.    On the call with CDS, the CDS representative willfully avoided disclosing his identity and employer for the vast majority of the call in order to trick or intentionally mislead Ms. CABINESS into believing that she was speaking with a representative of the DoEd.

50.    The CDS representative requested and obtained Ms. CABINESS' social security number, her full name, and created a new National Student Loan Data System account – the DoEd's website for borrowers to access their loan information. In addition, the representative asked Ms. CABINESS for authorization to withdraw fees directly from her bank account. However, Ms. CABINESS did not have that information with her at the time, and told the representative that she would call back the next day.

51.    Ms. CABINESS attempted to call what she believed to be the DoED back the next day.  She connected to a message system that identified the company, not as DoED, but as Campus Debt Solutions.  Ms. CABINESS immediately ended the call and did not call back again.

52.    Over the next several days, an employee of CDS named Daniel Benitez repeatedly called Ms. CABINESS on her cellular telephone, (xxx) xxx-0913, from numbers belonging to CDS, and tried to pressure her to enter into a loan repayment plan through CDS.

53.    With the assistance of the East Bay Community Law Center ("EBCLC"), Ms. CABINESS sent an e-mail to CDS, addressed to DBenitez@campusdebt.com, asking to be placed on CDS' do not call list. She stated in the e-mail: "I am not interested in any services with your company, Campus Debt Solutions. Please destroy any information you have collected from me and cease all contact immediately." (**Exhibit A**)

54.    On June 23, 2015, Ms. CABINESS received two calls from (510) 270-2836 – a number that belongs to CDS, that she did not recognize. She did not answer the calls.

55.     Continuing through the new year, CDS called Ms. CABINESS' cell phone repeatedly from the (510) 270-2836 number and other numbers, often several times in the same day. These repeated calls to Ms. CABINESS, particularly during the holidays, caused her a large amount of stress and anxiety. She did not answer the calls.  CDS called Ms. CABINESS' cellular telephone no fewer than 34 times.  As of February 2016, Ms. CABINESS was still receiving calls from CDS to her cell phone.

**C.      CDS' Use of an ATDS**

56.     CDS used equipment that has or had the capacity to store or produce telephone numbers to be called, using random or sequential number generator and to dial such numbers, also known as an "automatic telephone dialing system," as defined by 47 U.S.C. §227(a)(1), to place calls and/or text messages to the cellular telephone number belonging to Plaintiff.

57.     One of the ATDS that CDS used to call Plaintiff and other members of the class is the "Presence Solution Suite Version 9.2" a predictive dialer and auto dialer.

58.     CDS indicates on its website (www.campusdebt.com), and specifically on its privacy policy page (www.campusdebt.com/about/privacy-policy) that it uses an Automatic Telephone Dialing System to place both phone calls and text messages.  On its main page it sets forth:



(http://www.campusdebt.com/ /)

59.     And the CDS terms and conditions set forth:

By subscribing to Campus Debt you consent to receive electronic communications from Campus Debt in electronic form, via email, Short Message Service ("SMS Service") or wireless internet ("WAP Service") and may be sent via automatic telephone dialing systems which may use pre-recorded messages (http://www.campusdebt.com/about/terms-conditions/)

60.     CDS employed some or all of these practices and these systems when placing

-13-

calls to the cellular telephone numbers belonging to Plaintiff and the putative class members. Any human participation on the part of CDS was incidental to the harvesting and storage of Plaintiff's cell phone numbers and placement of the calls, and wholly immaterial to the capacity of CDS' calling system.

61.    On February 11, 2016, Ms. CABINESS answered a call from (510) 270-2836. The phone rang for several seconds before she answered.  Upon answering, Ms. CABINESS heard only silence for several seconds, and then Ms. CABINESS hung up the phone.

62.    Ms. CABINESS is informed and believes, and on the basis of such information and belief alleges that her experience with the call from CDS – answering the phone but hearing only silence or "dead air" – indicates that the call was placed using a predictive dialing system. A predictive dialing system allows a single human operator to make calls to multiple consumers at the same time. Whichever consumer answers the phone first will be connected to the human operator. All further consumers that answer the phone will hear only silence.

63.    CDS' telephone solicitation calls to Plaintiff and the proposed class, by means of the use of an ATDS or pre-recorded calling system, without their prior express written consent, is an intrusion on seclusion that is highly offensive, and would be highly offensive to any reasonable person.

## INJURY IN FACT

64.    Plaintiff and the class members had a legally protected privacy interest arising out of the TCPA to be free from unwanted calls and prerecorded messages to their cellular phones.

65.    That privacy interest barred entities like CDS from intruding upon the Plaintiff's and the class members' privacy.  Specifically, the TCPA barred CDS from calling these individuals on their cellular phones using an ATDS, unless CDS first obtained express consent.

66.    Plaintiff and the class members received calls directed at them by CDS.

67.    Those calls violated the individual rights of the Plaintiff and the class members.

68.    As such, the harms to the Plaintiff and class members arose directly from the

-14-

violation of their respective rights by CDS.

69.     These invasions of privacy caused frustration and annoyance by the Plaintiff and class members, who had not consented to these intrusions caused by CDS.  Plaintiff and class members have suffered an injury in fact.

## CLASS ACTION ALLEGATIONS

70.     It is CDS' policy and practice, in the course of business, to place calls using an ATDS and/or prerecorded voice to individuals whose cellular telephone numbers CDS obtained through false pretenses due to such individual calling the (800) 848-0979 Number using their cellular telephones.

71.     Therefore, Plaintiff brings this class action on behalf of herself and on behalf of all other persons similarly situated as members of the proposed class, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3).  This action satisfied the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

72.     The proposed class consists of:

All persons in the United States and its Territories:

      (a)     who received one of more telephone solicitation calls on their cellular telephone advertising CDS' student loan consolidation and loan forgiveness services, made by or on behalf of CDS;

      (b)     using an automated telephone dialing system, or artificial or prerecorded voice;

      (c)     without providing prior express written consent to receive such phone calls;

      (d)     since October 16, 2013.

73.     The members of the class are so numerous that joinder of all claims would be impracticable.  While the exact number of class members is unknown to Plaintiff at this time, Plaintiff alleges that there are more than 40 members of the class.

74.     There are questions of law and fact common to the class, which predominate

-15-

over any questions affecting individual class members.  The predominant common questions include:

       (a)    Whether CDS used an ATDS, or an artificial or prerecorded voice within the meaning of the TCPA and applicable FCC regulations, to place calls to the class;

       (b)    Whether CDS marketed its student loan consolidation and loan forgiveness services by placing automated telephone calls;

       (c)    Whether CDS placed telephone solicitation calls marketing its student loan consolidation and loan forgiveness services using an ATDS after October 16, 2013 to persons who did not previously provide CDS with prior express written consent to receive such calls on their cellular telephone numbers;

       (d)    Whether the unauthorized calls made by CDS using an ATDS in violation of the TCPA;

       (e)    Whether CDS should be enjoined from continuing to engage in such conduct;

       (f)    Damages, including whether the violations were negligent, willful or knowing.

       75.    Plaintiff's claims are typical of the claims of the other members of the class. CDS' conduct has caused Plaintiff and members of the class to sustain the same or substantially similar injuries and damages.  CDS' conduct has caused each member of the class to suffer a nuisance or invasion of privacy, intrusion upon their seclusion and use of the cell phones for which they paid a subscriber fee.  CDS has acted in a uniform manner with respect to Plaintiff and the other class members.  Plaintiff have no interests antagonistic to the interests of the other members of the class.

       76.    Plaintiff will fairly and adequately represent and protect the interests of the members of the class.  Plaintiff is a member of the class and does not have any conflict of

-16-

interest with other class members.  Plaintiff has retained and is represented by competent counsel who are experienced in complex class action litigation and claims involving violations of the TCPA.

77.     The nature of this action makes a class action the superior and appropriate procedure to afford relief for the wrongs alleged herein.  There will be no difficulty in the management of this class action.  The identity of the putative class, as well as the fact and time of calls made to putative class members, is ascertainable from electronic databases within CDS' custody or control.  Individualized litigation presents the potential for inconsistent or contradictory judgments.  A class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### FIRST CAUSE OF ACTION

### (Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*)

78.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

79.     The TCPA provides that it is unlawful for any person to make a non-emergency call using an automatic telephone dialing system or an artificial or recorded voice to any cellular phone service without prior express consent of the called party.

80.     CDS violated the TCPA by impermissibly placing calls to the cellular telephones of Plaintiff and the members of the class using an ATDS or an artificial or prerecorded voice without their prior express written consent.

81.     Plaintiff and the members of the class have a legally protected interest in being free from the intrusion of autodialed calls and calls using an artificial or prerecorded voice. These unauthorized and offensive calls harmed Plaintiff and the members of the proposed class, because they caused Plaintiff and the members of the proposed class to suffer a nuisance and an invasion of privacy, all as more particularly described above.  Such harm was fairly traceable to CDS's violations of the TCPA.

82.     CDS has policies, practices or procedures of placing calls to cell phones using an

-17-

1    ATDS or artificial or prerecorded voice, without the prior consent of the called parties.

2        83.    CDS' violations were negligent, or alternatively, they were willful or knowing.

3    47 U.S.C. §312(f)(1).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A.    Certify this matter as a class action under Rule 23(b)(2) and 23(b)(3);

B.    Appoint the named plaintiff as the class representative;

C.    Appoint the undersigned as Class Counsel for the classes to be represented;

D.    Award, statutory damages of $500 per violation determined to be negligent;

E.    Award statutory damages of $1,500 per violation determined to be willful;

F.    Grant a declaration that CDS's equipment and messages are regulated by the TCPA;

G.    Enter an order enjoining CDS from further violations of the TCPA; namely prohibiting CDS from using the (800) 848-0979 Number and prohibiting CDS placing non-emergency calls using an automatic telephone dialing system or an artificial or prerecorded voice, pursuant to 47 U.S.C. § 227(b)(3)(A);

H.    Grant costs of suit incurred herein;

I.    Award reasonable attorneys' fees as part of a common fund, if any; and

J.    Provide such other or further relief as the Court deems just and proper.

//
//
//
//
//
//
//
//

-18-

1

## JURY DEMAND

2       Plaintiff hereby demands trial by jury.

3   Dated:  March 24, 2017                    KEMNITZER, BARRON & KRIEG, LLP

4

5                                By:    /s/ Bryan Kemnitzer
                                        BRYAN KEMNITZER
6                                       ELLIOT CONN
                                        Attorneys for Plaintiff Winifred Cabiness, and the
7                                       putative class

8                                       EAST BAY COMMUNITY LAW CENTER

9

10                               By:    /s/ Sharon Djemal
                                        SHARON DJEMAL
11                                      Attorneys for Plaintiff Winifred Cabiness, and the
                                        putative class
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

---------- Forwarded message ----------
From: **winifred cabiness** <cabinew@gmail.com>
Date: Wed, May 27, 2015 at 4:00 PM
Subject: Re: Daniel - Campus Debt Follow up - Student Loans
To: Daniel Benitez <DBenitez@campusdebt.com>


Dear Mr. Benitez,

I am not interested in any services with your company, Campus Debt Solutions. Please destroy any information you have collected from me and cease all contact immediately.


Sincerely,
Winifred H Cabiness