KEMNITZER, BARRON, & KRIEG, LLP
BRYAN KEMNITZER Bar No. 066401
NANCY BARRON Bar No. 099278
ELLIOT CONN Bar No. 279920
445 Bush St., 6th Floor
San Francisco, CA 94108
Telephone: (415) 632-1900
nancy@kbklegal.com
elliot@kbklegal.com

EAST BAY COMMUNITY LAW CENTER
Sharon Djemal Bar No. 208461
3130 Shattuck Ave.
Berkeley, CA 94705
Telephone: (510) 269-6612
Facsimile: (510) 8490-1536
sdjemal@ebclc.org

Attorneys for Plaintiff Winifred Cabiness and the putative class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WINIFRED CABINESS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EDUCATIONAL FINANCIAL SOLUTIONS, LLC dba CAMPUS DEBT SOLUTIONS, BETA INVESTMENT GROUP, INC.; EQUITY ACQUISITIONS, LLC; VENTURETECH SOLUTIONS, LLC; DEBT.COM, LLC; and HOWARD DVORKIN<br><br>Defendants. | **Case No. 3:16-cv-01109-JST**<br><br>**DECLARATION OF ELLIOT CONN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS**<br><br>**Date: March 22, 2018**<br>**Time: 2:00 p.m.**<br>**Courtroom 9, 19th Floor**<br>**Judge: Hon. Jon S. Tigar** |

I, Elliot Conn, declare as follows:

1. I am an attorney licensed to practice law in all of the courts of the State of California including the court in which this action is pending. Our law firm, Kemnitzer, Barron,

& Krieg, LLP, along with the East Bay Community Law Center, was retained by Plaintiff Winifred Cabiness in this litigation. I have personal knowledge of the information stated below, based upon my knowledge of the facts and review of the file, and I am competent to testify thereto.

2. The facts and procedural history stated in the accompanying memorandum in support of this motion are accurate to the best of my knowledge based upon my review of the file, discussions with co-counsel, opposing counsel and Ms. Cabiness, discussions with our retained expert and the settlement administrator, evaluation of documents produced, research and discovery in this matter.

## I. CLASS ACTION CASE

3. This case arises out of the named Plaintiff, Winifred Cabiness' alleged receipt of automatically dialed marketing calls made by, or on behalf of, Defendant Educational Financial Solutions LLC dba Campus Debt Solutions ("CDS"), for which Ms. Cabiness alleges did not provide sufficient prior express written consent. Ms. Cabiness alleges she began receiving such calls in May 2015 and received calls over a period of nine months. The Second Amended Complaint ("Second Amended Complaint") seeks to allege violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. (the "TCPA"). Specifically, the Second Amended Complaint alleges that Defendant CDS and its allegedly related entities, Beta Investment Group, Inc., Equity Acquisitions, LLC, Venturetech Solutions, LLC, Debt.com, LLC, and Howard Dvorkin (collectively "Defendants"), allegedly placed telemarketing calls, using an automated telephone dialing system ("ATDS"), to the classes' cellular telephone numbers without first obtaining adequate prior express written consent to place such calls, as required by the Federal Communication Commission's 2012 TCPA Rule Making Order. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1839 (2012). ("2012 Order"). The 2012 Rule went to into effect on October 16, 2013. This rule went into effect on October 16, 2013. 77 Fed. Reg. 63240 (October 16, 2012). In order to define an adequate class, in the Second Amended Complaint, we sought to limit the class definition to

calls made after October 16, 2013.

4. Plaintiff's First Amended Complaint alleged class violations for calls allegedly placed within four years prior to September 23, 2016. [ECF No. 59, ¶ 49]. As a practical matter, however, discovery revealed that CDS did not place calls before November, 2013. As a result, using a class start date of October, 2013 as opposed to September 2012, does not impact the class size.

## II. TERMS OF SETTLEMENT SUMMARY

5. The Class Action Settlement Agreement, along with Exhibit 1-4, is attached hereto and marked as **Exhibit A**.

6. A summary of the terms of the settlement are set forth in Section 2 of the Settlement Agreement.

7. In arriving at this Settlement, which is a compromise on the part of all parties, we examined the evidence, the risks of trial and potential delay of protracted litigation, the viability of the Defendants, based off of discovery and reports from our investigator, the various outcomes to be expected from a trial on merits and/or appeal on procedural or substantive issues, and the potential effect of these outcomes on Plaintiff and the class. Of note, during depositions in this matter, we learned that CDS was in "wind-down mode" and no longer taking new customers. The Campus Debt Solutions website is no longer active. While the Second Amended Complaint seeks to allege a single business enterprise theory against additional allegedly related Defendants, we did evaluate the possibility of being unable to collect after judgment. We have determined that, in our experience, this settlement was the best outcome for all named parties, as well as absent class members, under the circumstances of this case.

## III. APPOINTMENT OF CLASS REPRESENTATIVE AND APPOINTMENT OF CLASS COUNSEL

8. Pursuant to Sections 1.13 and 10.1(d) of the Class Action Settlement Agreement, Plaintiff requests that Winifred Cabiness be appointed as the class representative.

9. We request that our law firm, Kemnitzer, Barron & Krieg, LLP, along with the

East Bay Community Law Center, be appointed as class counsel. As set forth in the section dealing with my background as set forth in the accompany Declaration of Nancy Barron setting forth the background of the firm, our firm has extensive experience in class action cases and consumer law.

## IV. TERMS OF SETTLEMENT

### A. Injunctive Relief Provided

10. The terms of the settlement of this case, as summarized in Section 2 of the Settlement Agreement, give the class the non-monetary relief they could have achieved if we had succeeded at trial. Following the filing of this lawsuit, CDS went into "wind-down mode," and is no longer soliciting new clients. Nonetheless, as set forth in Section 5.7 of the Settlement Agreement, Defendants have agreed to be bound by an injunction to be entered at the time of final approval stating that "Defendants shall be enjoined from using an ATDS to place telemarketing calls on behalf of CDS without obtaining prior express written consent."

### B. Monetary Relief

11. This Settlement Agreement is unique among TCPA class action settlements in that the Agreement provides for cash via direct distribution without the need for a claims process.[1] Assuming that mailing addresses can be identified for 100% of the class, each class member will receive a check for $20.11 as a pro rata distribution. We will set forth the percentage and number of Class Members that will be receiving Benefits Checks in our Motion for Final Approval. We estimate that we will be able to send Benefits Checks to between 81.6% and 96.55% of the Settlement Class Members.

### C. Additional Settlement Terms

12. The Settlement also acknowledges that the Class Representative and the Settlement Class are entitled to an award of Attorneys' Fees and Costs and a Service Award from the Settlement Fund. Class Counsel played an important contributory role and were a material

---

[1] If the Settlement Administrator is only able to identify an email address for a class member and not a mailing address, that class member will need to provide a mailing address on the Settlement Website in order to receive a Benefits Check. (Settlement Agreement, Section 5.3)

and significant factor in the process that ultimately resulted in the consideration to be provided to the Settlement Class Members. Section 15 of the Agreement provides that Class Counsel may seek Attorneys' Fees of up to $330,000 (30% of the settlement fund) and seek reimbursement of out-of-pocket Costs up to $20,000. As of the date of this declaration, Kemnitzer, Barron, & Krieg has incurred approximately $19,000 in out-of-pocket costs. Class Counsel's current combined lodestar is $409,208. As a result, at the time of Final Approval, Class Counsel will be seeking fees in an amount significantly less than actual lodestar.

**D. Designation of the National Consumer Law Center as the *Cy Pres* Recipient**

13. The Settlement Agreement nominates the National Consumer Law Center ("NCLC") as the designated *cy-pres* recipient for funds remaining from uncashed checks. (§§ 1.16, 5.4, 5.5). There is no reversion to Defendants. I chose to nominate the National Consumer Law Center, a nationwide organization, due to their long track record of working to strengthen and defend the essential consumer protections of the TCPA. Attached as **Exhibit B** is a factsheet setting forth NCLC's TCPA work.

## V. IDENTIFICATION OF SETTLEMENT CLASS MEMBERS

14. As part of discovery, Defendants have produced, in .csv format, the results of unredacted queries of Defendants' phone records and Customer Relationship Management ("CRM") software. These records set forth outgoing calls made by, or on behalf of, CDS, during the class period. These "Call Records" contained lists of telephone numbers dialed, the date and time of the call, and the name of the individual called, along with partial information regarding the telephone owners' mailing addresses, and email addresses. The Call Records contain email addresses for 85.4% of the telephone numbers dialed and contain complete mailing addresses for 20.1% of the numbers dialed.

15. We retained a telecommunications expert, Jeffrey Hansen, to analyze the Call Records and determine how many of the telephone numbers dialed were assigned to cellular services at the time they were dialed. Hansen used the following methodology:

a. He extracted the phone numbers from the Call Records to create a new "phone

number" list;

b. He cleaned up this list by taking out any characters, including: parentheses, spaces, dashes, periods, and leading "1"s. Leading 1s were taken out last;

c. He compared the cleaned up list with the North American Numbering Plan Assignment of Area Codes and filtered out not in use area codes (e.g., he took out numbers with the area code 555);

d. He compared this list with the "Wireless Blocked Identifier List" in order to determine which numbers were originally assigned to cellular telephone dialing services;

e. He also compared the list to the "Ported to Wireless Numbers List," at the time that the given call was placed to determine if calls were placed to numbers that were ported to wireless more than 15 days before the call was placed; and

f. He compared the list to the "Audit File," to flag numbers that had been ported back and forth.

16. Using this methodology, Hansen determined that 30,572 unique cellular telephone numbers were dialed. Therefore the class consists of approximately 30,572 individuals.

## VI. SETTLEMENT ADMINISTRATION

17. The Settlement Agreement designated Heffler Claims Group ("Heffler") as the Settlement Administrator and I have secured a contract with Heffler. Heffler has agreed to cap settlement administration costs at $125,000, with estimated costs at $109,937. Heffler is well experienced in TCPA class action administration.

## VII. NOTICE PLAN

18. I have worked with Heffler to create the Notice Plan in order to disseminate the best notice to most class members. As set forth above, through Defendants' records, we have been able to obtain mailing address for approximately 20.1% of Settlement Class Members and email addresses for approximately 85.4%. Section 7.3 of the Settlement Agreement provides for a "reverse lookup" process to find mailing addresses for the owner of cellular telephone number,

at the time the number was dialed. Heffler has informed me that they have used Lexis Nexis in the past in similar cases and by using the reverse lookup process, along with an algorithm to determine the most likely owner at the time the number was dialed, that they estimate that they will be able to validate mailing addresses for 77% of the class members for whom we do not already have mailing addresses. As a result, we will be able to provide notice by mail to 81.6% of the class and by email to 85.4% of the class, with some form of notice being sent to 96.66% of the class.

19. **Mailed Postcard Notice:** The Settlement Agreement provides for a mailed postcard notice that summarizes the terms of the Settlement Agreement and directs Settlement Class Members to the Settlement Website. (§§ 1.41, 7.2(c), Exhibit 2). If a Settlement Class Member receives the Postcard Notice, they do not need to do anything to receive a Benefit Check, however, they have the option of providing an updated mailing address on the Settlement Website. (§§ 2.4, 2.5, 5.3(b), 7.2(c)). Because the Settlement Class Members that receive the Postcard Notice do not need to do anything to receive their Benefit Check, we believe that a well-designed Postcard Notice is the best notice practicable under the circumstances.

20. **Supplemental Email Notice:** The Settlement Agreement also provides for supplemental notice to be sent by email to the 85.4% of Settlement Class Members with identified email addresses. (§§ 7.2(d), Exhibit 3). This Long Form Email Notice, directs Settlement Class Members to the Settlement Website. If a Settlement Class Member only receives Email Notice, then that Class Member will be required to provide a mailing address on the Settlement Website in order to receive a Benefit Check. (§§ 2.4, 2.5, 7.2(f), 8.4(d)).

21. **Settlement Website:** The Settlement Agreement provides for the creation of a Settlement Website at: www.CDSphonecallsettlement.com. The Website will host copies of the Complaint, the Settlement Agreement, the Notices, the Preliminary Approval Order, Plaintiff's motion for preliminary approval of the Agreement, Plaintiff's motion seeking the Final Approval Order and Judgment, the Fee, Cost and Service Award Application, and other pertinent documents, materials, and information about this Settlement. In addition, Settlement Class

Members will be able to provide and update mailing addresses on the Settlement Website. (§8.4(d)).

**VIII. INVESTIGATION AND DISCOVERY**

22. Kemnitzer, Barron & Krieg, and our co-counsel, the East Bay Community Law Center, have invested numerous hours and advanced significant costs in the investigation and prosecution of this case. Class Counsel intensively investigated the factual and legal bases for the claims. The Parties engaged in litigation for nearly two years, during which time the Parties conducted extensive discovery and motion practice. Plaintiff propounded written discovery regarding Defendants' policies and practices, equipment used, and the electronic records that Defendants maintained to document calls. Class Counsel also pursued lengthy meet and confer sessions to obtain broad discovery. I have reviewed thousands of pages of documents, and deposed one of the two key witnesses deposed.

23. Defendants produced gigabytes of electronic information that included detail call records and data from Defendants' CRM software. We retained Hansen to analyze the call records and ascertain the class of called cellular telephone numbers. As set forth above, the data provided reveals that there are approximately 30,572 members of the Settlement Class, not including those who may submit a valid request for exclusion.

**IX. ARM'S LENGTH NEGOTIATIONS**

24. Following the filing of the Second Amended Complaint, the Parties began to explore settlement. On June 5, 2017, the Parties, including myself, attended a full-day mediation with the Honorable Peter D. Lichtman (Ret.) at JAMS. At the mediation, we entered into a Memorandum of Understanding, contingent on a specific class size. A dispute subsequently arose over the size of the class. The Parties' respective positions on this issue is set forth in the Joint Case Management Conference Statement filed on November 27, 2017 [ECF No. 104]. We subsequently resolved our disputes regarding the class size.

25. I believe the Settlement provides an excellent result for Class Members and is fair, adequate and reasonable. In negotiating the Settlement, we considered the risks inherent to

litigation and the various defenses available to the Defendants. In negotiating the Settlement, we considered information regarding CDS's ability to pay the settlement amount. Shortly after this action was filed, CDS stopped enrolling new clients and seems to have ceased business operations. In order to collect any money in this case, Plaintiff would likely need to meet the very high burden of proving that the Defendants operated as a common business enterprise. Having determined that Defendants' financial situation would likely cause a larger settlement or judgment to go unpaid, Plaintiff reasonably settled for an amount that still provides substantial relief to class members while preserving Plaintiff's ability to collect the settlement amount. The reality that Plaintiff and Class Members could end up recovering only a fraction of the settlement benefits or even losing at trial was significant enough to convince us that the Settlement reached with Defendants outweighs the risks of continued litigation. Fully informed of the strength of our legal case and Defendants' financial realities, we negotiated this Settlement.

26. Based off of our investigation into CDS's business practice practices and procedures, and given the alleged common harm, we believe it is fair to distribute the Distributable Settlement Fund on a pro rata basis without accounting for the specific number of calls to each individual Class Member. Our investigation and discovery have shown that Settlement Class Members' numbers were inputted into dialing campaigns and were called for a specified period of time.

27. And through direct distribution, as opposed to a claims process, we will be able to provide tangible monetary relief to the vast majority of the Settlement Class Members.

## X. CLASS REPRESENTATIVE'S CASE INVOLVEMENT AND SERVICE AWARD

28. Ms. Cabiness originally brought this action individually based upon calls she alleges she received from CDS. If Ms. Cabiness were to prevail at trial, she could have received up to $51,000. Ms. Cabiness has sacrificed this potential recovery in order to obtain a benefit for the unnamed class. Further details regarding Ms. Cabiness's involvement will be set forth at the time of final approval.

29. At final approval, we will request a Service Award of up to $10,000 for the Class

Representative. The Service Award is in no way conditional on having the Class Representative sign the Settlement Agreement. I have explained to Ms. Cabiness that the Court has discretion to give a smaller service award or to give her no award at all.

30. Plaintiff has indicated that she understands this and that she supports the Settlement, regardless of if she receives any award at all.

31. Regardless, the requested Service Award is within the range approved by Courts. The following service awards are examples of service awards that some of our other class representatives in other class actions have been awarded:

| Case | Incentive Award Amount | Date of Award |
|---|---|---|
| *Deluca v. Wescom Credit Union* Los Angeles County Superior Court Case No. BC472473 | $2,500.00 | January 31, 2014 |
| *Williams, Catherine v. Tidewater Finance Company* Los Angeles County Superior Court Case No. BC487314 | $2,000.00 | November 26, 2013 |
| *Grans v. Safe Credit Union* Contra Costa County Superior Court Case No. C11-02692 | $4,500.00 | November 5, 2013 |
| *Wimberly v. Triad Financial Corporation* Orange County Superior Court Case No. 30-2008 00059511 | $15,000.00 | July 22, 2013 |
| *Baker v GEMB Lending, Inc.* U.S. District Court Case No. C10-05261 (SBA) | $10,000.00 | December 28, 2012 |

## XI. MY BACKGROUND

32. I have been practicing consumer law as an attorney at Kemnitzer, Barron & Krieg, LLP, since 2011. I earned my undergraduate degree from Colgate University in 2008 and graduated from University of California, Berkeley, Boalt School of Law in May 2011. During law school I served as Senior Editor of the Berkeley Journal of International Law. In addition, while in law school, I received the CALI Excellence for the Future Awards in Civil Procedure and Contracts and the American Jurisprudence Award in California Community Property, having received the highest grade in each of those three classes.

33. I was a judicial extern for the Honorable James Ware, United States District Court, Northern District of California in San Jose, during the summer of 2009. During the

summer of 2010, I worked as a summer associate at Kemnitzer, Barron & Krieg, during the summer of 2009. From the fall of 2010, until I graduated from Boalt Hall, I continued to work as a law clerk at Kemnitzer, Barron & Krieg LLP. In the spring of 2011, I served as a clinical law student at the East Bay Community Law Center, Neighborhood Justice Clinic in Berkeley, CA. There I assisted clients facing debt collection lawsuits, researched defenses, prepared pleadings and other required documents, and negotiated favorable settlements. I continue to volunteer at the EBCLC Consumer Justice Clinic as a volunteer supervising attorney, supervising and training law students in assisting low income clients with a variety of consumer matters.

34. I am actively involved in a number of organizations seeking to promote the interests of consumers through public interest litigation. I am a member of Consumer Attorneys of California (formerly California Trial Lawyers Association) and am a member of the National Association of Consumer Advocates. I am also actively involved with Public Citizen and the East Bay Community Law Center.

35. For the past several years, I have been an annual Guest Lecturer for the Introduction to Consumer Law course at University of California, Berkeley, Boalt School of Law. I have also lectured on consumer law at UC Hastings. In addition, I have lectured on various aspects of consumer rights litigation for the International Association of Lemon Law Advocates (IALLA), and other organizations.

36. I am actively involved in all aspects of consumer class action litigation since starting at Kemnitzer, Barron & Krieg. This includes, but is not limited to, interviewing clients, drafting briefs, complaints, and other pleadings, serving as a client liaison, preparing and responding to discovery, taking and defending depositions, garnering and analyzing evidence, drafting, filing, and arguing class certification motions, conducting mediation and settlement conferences, and class action trial preparation. During my time at the firm, I have worked on the following consumer class actions:

1. *Ally Financial, Inc. v. Lazrovich, et al*, Civil No. 111CV195659 (Santa Clara Superior Court)
2. *Cooper v. Rohl, LLC,* Contra Costa County Superior Court Case No. C15-00352
3. *California Community Credit Union v. Chapman*, Sacramento County Superior

Court Case No. 34-2009-00054626

4. *DeLuca v. Wescom Central Credit Union*, Los Angeles County Superior Court, Case No. BC472473
5. *Dixon v. County Financial Services, Inc., et al.*, Alameda County Superior Court, Case No. RG10537949
6. *Eugene, et al. v. A-L Financial Corp*, Sacrament County Superior Court, Case No. 34-2011-00099541
7. *Fireside Bank v. Gonzales, et al., and Related Cross-Action*, Los Angeles County Superior Court, Case No. BC 445836
8. *Grans v. SAFE Credit Union*, Contra Costa Superior Court, Case No. C11-02692
9. *Hamm v. Consumer Portfolio Services, Inc., et al*, 34-2010-00081238 (Sacramento Superior Court)
10. *Hardcastle v. Bank of Stockton*, Sacramento County Superior Court, Case No. 34-2013-00148919
11. *Jekowsky v. BMW of North America, LLC, USDC Northern District,* Case No. 3:13-CV-02158-VC
12. *Jones v. Centerone Financial Services, LLC*, Case No. 3:14-CV-01673 SI
13. *King v. California Republic Bank, Orange County Superior Court*, Case No. 30-2013-00655804-CU-BT-CXC
14. *Lewis v. Systems & Services Technology, Inc*., Los Angeles County Superior Court, Case No. BC556372
15. *Merco Credit Union v. Jim Vanburen, et al.*, Merced County Superior Court, Case No. CV001627
16. *Morrison v. Credit Acceptance Corporation, et al., USDC Northern District*, Case No. C10-00549 PJH
17. *Pacific Service Credit Union v. Eugenia Aguilar Hernandez, et al.*, Fresno County Superior Court, Case No. 06ECG03625 JH
18. *Padilla v. Premier Auto Credit, et al.*, Los Angeles County Superior Court, Case No. BC482350
19. *Palacios v. Karplus Warehouse, Inc, et al.*, Los Angeles County Superior Court, Case No. BC470675
20. *Pha v. Yia Yang*, Civil No. 2:12-cv-01580 (Eastern District of California)
21. *Quality Financial, Inc. v. Castillo, et al., and Related Cross-Action*, Los Angeles Superior Court, Case No. KC061825
22. *Ramirez v. Balboa Thrift and Loan Association, and Related Actions*, San Diego County Superior Court, Case No. 37-2009-00099225-CU-BT-CTL
23. *Salimi v. BMW Financial Services, et al.*, USDC Northern District of California, Case No. C12-01754 JSW
24. *Santos v. Meriwest Credit Union, et al.*, Alameda County Superior Court, Case No. RG09480463
25. *Sutherland v. Santander Consumer USA, Inc.*, Alameda County Superior Court, Case No. RG10507124
26. *TK Credit Recovery v. Blaurock, and Related Cross-Action*, Alameda County Superior Court, Case No. RG13676609
27. *TK Credit Recovery v. Macias, and Related Cross-Action*, Contra Costa County Superior Court, Case No. C14-00919
28. *White v. Topaz Financial Services, LLC, et al.*, Los Angeles County Superior Court, Case No. BC472910
29. *Williams v. Tidewater Finance Company, et al.*, Los Angeles County Superior Court, Case No. BC487314
30. *Young v. Rudolph Incorporated, et al.*, Sacramento County Superior Court, Case No. 34-2009-00064451

37. Based upon the Settlement Agreement, I anticipate the following approximate timetable, assuming (for purposes of illustration a preliminary approval of _____, 2018, subject to the convenience of the Court as to the hearing dates:

38. Based upon the Settlement Agreement, I anticipate the following approximate timetable, assuming (for purposes of illustration a preliminary approval of March 22, 2018, subject to the convenience of the Court as to the hearing dates:

**Summary of Applicable Deadlines**

| | | |
|---|---|---|
| 1. | Preliminary Order Approved by the Court | March 22, 2018 |
| 2. | Deadline for Defendants to Fund Settlement Fund (Settlement Agreement and Release §5.1) (Preliminary Order +10D) | April 2, 2018 |
| 3. | Deadline for Class Notice to be sent by Settlement Administrator (Settlement Agreement and Release §§7.2(c),(d)) (Preliminary Order +45D) | May 7, 2018 |
| 4. | Deadline for Class Counsel to File Fee, Cost and Service Award Application (Settlement Agreement and Release §15.2) (Deadline for exclusions/objections -17D) | June 4, 2018 |
| 5. | Objection/Exclusion Deadline (Settlement Agreement and Release §1.37) (Preliminary Approval Order +91D) | June 21, 2018 |
| 6. | Settlement Administrator shall provide Class Counsel and Defendants' Counsel with a list of all Requests for Exclusion (Settlement Agreement and Release §§8.4(g), 12.2) (Objection/Exclusion Deadline +10D) | July 2, 2018 |
| 7. | Deadline for Class Counsel to File Motion for Final Approval (Settlement Agreement and Release §11.2(b)) (USDC-ND Cal Local Rule 7-2) (Hearing -35D) | July 5, 2018 |
| 8. | Deadline for Class Counsel to Provide list of all Requests for Exclusion to the Court (Settlement Agreement and Release §§11.2(b), 12.1) (USDC-ND Cal Local Rule 7-2) (Hearing -35D) | July 5, 2018 |
| 9. | Deadline for Response to any Objection Filed (Settlement Agreement and Release §11.2(c)) (Hearing -28D) | July 12, 2018 |
| 10. | Deadline for Settlement Administrator to File Compliance Declaration (Settlement Agreement and Release §§7.4, 11.1) (Hearing -10D) | July 30, 2018 |
| 11. | Final Approval Hearing (Settlement Agreement and Release §10.1(f)) (Preliminary Order +135D) | August 9, 2018 |

| | | |
|---|---|---|
| 12. | Effective Date<br>(Settlement Agreement and Release §1.22)<br>(Final Approval Order +35D) | September 13, 2018 |
| 13. | Payment of Benefits Checks<br>(Settlement Agreement and Release §5.3(c))<br>(Effective Date +30D) | October 13, 2018 |
| 14. | Expiration of Benefits Checks<br>(Settlement Agreement and Release §5.4)<br>(Issuance +90D) | January 11, 2019 |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and this Declaration is executed on January 26, 2018, at San Francisco, California.

/s/ *Elliot Conn*
ELLIOT CONN