1
2
3
4                          UNITED STATES DISTRICT COURT
5                        NORTHERN DISTRICT OF CALIFORNIA
6

7    WINIFRED CABINESS,                    Case No. 16-cv-01109-JST

8                 Plaintiff,

9         v.                              **ORDER GRANTING PRELIMINARY
                                          APPROVAL OF CLASS ACTION
10   EDUCATIONAL FINANCIAL                SETTLEMENT**
     SOLUTIONS, LLC, et al.,
11                                        Re: ECF No. 109
                 Defendants.
12

13        Before the Court is Plaintiff's unopposed motion for preliminary approval of class action

14   settlement.  ECF No. 109.  The Court will grant the motion.

15   **I.     BACKGROUND**

16        Plaintiff Winifred Cabiness brought this action on behalf of herself and similarly situated

17   individuals pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.*

18   ("TCPA").  ECF No. 88 ¶¶ 7, 31.  Cabiness alleges that Defendants Educational Financial

19   Services, LLC dba Campus Debt Solutions ("CDS"); Beta Investment Group, Inc.; Equity

20   Acquisitions, LLC; Venturetech Solutions, LLC; Debt.Com, LLC; and Howard Dvorkin are a

21   single business enterprise that "violated the TCPA by impermissibly placing calls to the cellular

22   telephones of [Cabiness] and the members of the class using an ATDS [automatic telephone

23   dialing system] or an artificial or prerecorded voice without their prior express written consent."

24   *Id.* ¶¶ 9-20, 80.

25        Cabiness asserts that Defendants acquired a phone number previously used by the United

26   States Department of Education ("DOE") to operate a call center for federally backed student loan

27   programs.  *Id.* ¶ 42.  This number was allegedly listed on the DOE's forms, website, and consumer

28   account statements.  *Id.* ¶¶ 42, 48.  When class members called the number believing they were

United States District Court
Northern District of California

1  contacting the DOE, Defendants allegedly collected their telephone numbers and stored them in a

2  database.  *Id.* ¶ 46.  Cabiness alleges that Defendants used these stored numbers to place calls with

3  an ATDS to mislead class members into paying for student loan forgiveness and payment

4  programs that were otherwise offered for free by the federal government.  *Id.* ¶¶ 46-47.

5  On June 5, 2017, the parties "attended a full-day mediation with the Honorable Peter D.

6  Lichtman (Ret.) at JAMS" but were unable to finalize a settlement following the mediation.  ECF

7  No. 110 ¶ 24.  The parties eventually resolved their disputes and reached the proposal that is now

8  before the Court.  *Id.*

9  On March 28, 2018, the Court ordered supplemental briefing on the adequacy of class

10  counsel and two aspects of the notice procedures.  ECF No. 115.  Cabiness timely filed the

11  requested briefing on April 9, 2018.  ECF No. 116.

12  **II.       CONDITIONAL CLASS CERTIFICATION**

13  Cabiness requests conditional class certification of the following class for settlement

14  purposes:

15  [A]ll persons in the United States and its Territories:

16  (a) who received one of more telephone solicitation calls on their
    cellular telephone advertising CDS' student loan consolidation and
17  loan forgiveness services, made by or on behalf of CDS;

18  (b) using an automated telephone dialing system, or artificial or
    prerecorded voice;
19

20  (c) without providing prior express written consent to receive such
    phone calls;

21  (d) since October 16, 2013.
22

23  Excluded from the Settlement Class are the following: (i) any trial
    judge that may preside over this Action; (ii) any of the Defendants;
    (iii) any of the Released Parties; (iv) Class Counsel and their
24  employees; (v) the immediate family of any of the foregoing
    persons; and (vi) any person who has previously given a valid
25  release of the claims asserted in this Action.

26  *Id.* at 10-11.

27  **A.       Legal Standard**

28  Class certification under Rule 23 of the Federal Rules of Civil Procedure is a two-step

United States District Court
Northern District of California

2

1    process.  First, a plaintiff must demonstrate that the four requirements of Rule 23(a) are met:

2    numerosity, commonality, typicality, and adequacy.  "Class certification is proper only if the trial

3    court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied."  *Wang v.*

4    *Chinese Daily News, Inc.*, 737 F.3d 538, 542-43 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v.*

5    *Dukes*, 564 U.S. 338, 351 (2011)).

6         Second, a plaintiff must establish that the action meets one of the bases for certification in

7    Rule 23(b).  Cabiness relies on Rule 23(b)(3) and must therefore establish that "questions of law

8    or fact common to class members predominate over any questions affecting only individual

9    members, and that a class action is superior to other available methods for fairly and efficiently

10   adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

11        When determining whether to certify a class for settlement purposes, a court must pay

12   "heightened" attention to the requirements of Rule 23.  *Amchem Prods., Inc. v. Windsor*, 521 U.S.

13   591, 620 (1997).  "Such attention is of vital importance, for a court asked to certify a settlement

14   class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the

15   proceedings as they unfold."  *Id.*

16        **B.    Analysis**

17             **1.    Rule 23(a)(1): Numerosity**

18        Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

19   impracticable."  Fed. R. Civ. P. 23(a)(1).  The proposed class includes approximately 30,572

20   people and easily satisfies this standard.  ECF No. 110 ¶ 16.

21             **2.    Rule 23(a)(2): Commonality**

22        Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed.

23   R. Civ. P. 23(a)(2).  A common question "is capable of classwide resolution – which means that

24   determination of its truth or falsity will resolve an issue that is central to the validity of each one of

25   the claims in one stroke."  *Wal-Mart*, 564 U.S. at 350.  For the purposes of Rule 23(a)(2), "even a

26   single common question" is sufficient.  *Id.* at 359 (quotation marks and internal alterations

27   omitted).

28        All proposed class members in this case share the common question of whether, in

United States District Court
Northern District of California

violation of the TCPA, they received automated calls from Defendants without prior express written consent.  The existence of this question satisfies the commonality requirement.

### 3.    Rule 23(a)(3): Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed R. Civ. P. 23(a)(3).  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  *Id.* (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

Cabiness's claims are typical of the class claims.  All members of the proposed class, including Cabiness, have allegedly been injured by the same conduct: receiving, without prior consent, automated calls from Defendants advertising CDS's student loan consolidation and forgiveness services.

### 4.    Rule 23(a)(4): Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This "requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).

The record contains no evidence suggesting that Cabiness has a conflict of interest with other class members.  She shares a common claim with the class, seeks the same relief as they do, and has every incentive to vigorously prosecute the action on behalf of the class.  In addition, class counsel have submitted declarations highlighting their extensive experience in litigating consumer class actions and consumer protection cases.  ECF No. 110 ¶¶ 32-36; ECF No. 111 ¶¶ 4-19; ECF No. 116-2 ¶¶ 2-10.  Both Cabiness and class counsel will adequately represent the proposed class.

United States District Court
Northern District of California

4

**5.     Rule 23(b)(3):  Predominance and Superiority**

Finally, Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Courts must consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id.*  The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed. 1986)).  Similarly, "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)

The dominant legal issue in this case is whether Defendants used an ATDS to make calls to class members without their prior express written consent.  The questions that arise from this issue predominate over any questions that could affect only individual class members.  A class action is also a superior method for fairly and efficiently adjudicating those and other questions. The class consists of thousands of members who would be unlikely to bring individual claims for the relatively small amounts of money they each are due.  Even if this were not so, resolving their disputes in a single class action would be far more efficient than litigating their individual cases, and a class action would not be difficult to manage.  There appear to be no competing cases

United States District Court
Northern District of California

1    concerning the class, nor are there any reasons why it would be undesirable to litigate the case in

2    this forum.  The proposed class satisfies the requirements of Rule 23(b)(3).

3          Because the proposed class meets all of the requirements of Rules 23(a) and 23(b)(3),

4    provisional certification of the proposed class is appropriate for purposes of settlement.

5    **III.    APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL**

6          Cabiness meets the commonality, typicality, and adequacy requirements of Rule 23(a), and

7    the Court will appoint her as class representative.

8          When a court certifies a class, it must consider the following when appointing class

9    counsel:

10                  (i) the work counsel has done in identifying or investigating
                    potential claims in the action;

11

12                  (ii) counsel's experience in handling class actions, other complex
                    litigation, and the types of claims asserted in the action;

13                  (iii) counsel's knowledge of the applicable law; and

14                  (iv) the resources that counsel will commit to representing the class.

15   Fed. R. Civ. P. 23(g)(1)(A).  The court may also "consider any other matter pertinent to counsel's

16   ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

17   Kemnitzer, Barron, & Krieg, LLP ("Kemnitzer") and the East Bay Community Law Center

18   ("EBCLC") obtained a good understanding of the issues and vigorously prosecuted this action by

19   engaging in extensive motion practice, thorough discovery, and productive negotiation.  ECF No.

20   110 ¶¶ 22-24; ECF No. 116-2 ¶ 10.  Additionally, as noted when discussing adequacy, Kemnitzer

21   and EBCLC have significant prior experience in litigating consumer protection cases, including

22   class actions.  ECF No. 110 ¶¶ 32-36; ECF No. 111 ¶¶ 4-19; ECF No. 116-2 ¶¶ 2-10.  For these

23   reasons, the Court will appoint Kemnitzer and EBCLC as class counsel pursuant to Federal Rule

24   of Civil Procedure 23(g).

25   **IV.    PRELIMINARY APPROVAL**

26          **A.    Legal Standard**

27          The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class

28   actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Courts generally

United States District Court
Northern District of California

6

employ a two-step process in evaluating a class action settlement.  First, courts make a preliminary

determination concerning the merits of the settlement and, if the class action has settled prior to

class certification, the propriety of certifying the class.  *See* Manual for Complex Litigation

(Fourth) § 21.632 (2004).  Second, courts must hold a hearing and make a final determination of

whether the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

At the preliminary approval stage, the court must determine whether the settlement falls

"within the range of possible approval."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078,

1080 (N.D. Cal. 2007) (quotation omitted).  To assess a settlement proposal, courts must balance a

number of factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and
> likely duration of further litigation; the risk of maintaining class
> action status throughout the trial; the amount offered in settlement;
> the extent of discovery completed and the state of the proceedings;
> the experience and views of counsel; the presence of a governmental
> participant; and the reaction of the class members to the proposed
> settlement.

*Hanlon*, 150 F.3d at 1026.[1]  The proposed settlement must be "taken as a whole, rather than the

individual component parts" in the examination for overall fairness.  *Id.*  Courts do not have the

ability to "delete, modify, or substitute certain provisions," *id.* (quoting *Officers for Justice v. Civ.*

*Serv. Comm'n of San Francisco*, 688 F.2d 615, 630 (9th Cir. 1982)); the settlement "must stand or

fall in its entirety," *id.*

The proposed settlement need not be ideal, but it must be "fair, adequate and free from

collusion."  *Id.* at 1027.  Preliminary approval of a settlement is appropriate if "the proposed

settlement appears to be the product of serious, informed, non-collusive negotiations, has no

obvious deficiencies, does not improperly grant preferential treatment to class representatives or

segments of the class, and falls within the range of possible approval."  *In re Tableware*, 484 F.

Supp. 2d at 1079 (quotation omitted).  "The initial decision to approve or reject the settlement

under Fed. R. Civ. P. 23(e) is committed to the sound discretion of the trial judge."  *City of Seattle*,

955 F.2d at 1276.  Courts "must be particularly vigilant not only for explicit collusion, but also for

---

[1] This case does not have a governmental participant, so the Court need not consider that factor.

1    more subtle signs that class counsel have allowed pursuit of their own self-interests and that of

2    certain class members to infect the negotiations."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654

3    F.3d 935, 947 (9th Cir. 2011).

4          **B.       Terms of the Settlement**

5          The proposed settlement ("Settlement") creates a fund in the amount of "$1,100,000.00

6    that will [be] used for cash payments to Settlement Class Members, the costs of notice and

7    settlement administration (capped at $125,000), a Court-approved Service Award, and Court-

8    approved Attorneys' Fees and Costs."  ECF No. 109 at 11 (citations to settlement agreement

9    omitted).  Defendants have agreed to send a "check, via direct distribution, in the amount of at

10   least $20.00," to "each Settlement Class Member, for whom the Settlement Administrator is able

11   to obtain a valid mailing address."[2]  *Id.*  Class members will not be required to submit a claim

12   form in order to receive their payments.  ECF No. 110-1 at 23.  Defendants have also agreed to

13   injunctive relief, including an injunction that prohibits them "from using an ATDS to place

14   telemarketing calls on behalf of CDS without obtaining prior express written consent."  *Id.* at

15   24-25.

16         The Settlement Administrator will use Defendant's call records and "a reverse lookup

17   process through Lexis Nexis to attempt to obtain the name and address associated with each

18   cellular telephone number" that was dialed during the relevant period.  *Id.* at 13.  Counsel

19   estimates that this process, when combined with addresses already known to counsel, will result in

20   mailing addresses for 81.6% of the class.  ECF No. 110 ¶ 18.  The following notice plan is

21   estimated to reach 96.66% of the class, *id.*:

22                  **1.     Mailed Postcard Notice**

23                  . . . [T]he Settlement Administrator, Heffler Claims Group, will
                    send, via U.S. mail, a "Postcard Notice" that summarizes the terms
24                  of the Settlement Agreement and directs Settlement Class Members
                    to the Settlement Website.  If a Settlement Class Member receives
25                  the Postcard Notice, they need not do anything to receive a Benefit
                    Check, however, they have the option of providing an updated
26                  mailing address on the Settlement Website.

27   ────────────────────────

28   [2] The Settlement designates Heffler Claims Group as the Settlement Administrator.  ECF No.
     110-1 at 17.

United States District Court
Northern District of California

8

### 2.  Email Notice

A supplemental Long Form Notice, will be sent, via email, to the 85% of Settlement Class Members with identified email addresses. The Email Notice will direct Settlement Class Members to the Settlement Website to allow those members to provide mailing addresses so they can receive Benefit Checks.

### 3.  Settlement Website

The Settlement Administrator shall create a Settlement Website, www.CDSphonecallsettlement.com from which Settlement Class Members can access copies of the Complaint, the Settlement Agreement, the Notices, the Preliminary Approval Order, Plaintiff's motion for preliminary approval of the Agreement, Plaintiff's motion seeking the Final Approval Order and Judgment, the Fee, Cost and Service Award Application, and other pertinent documents, materials, and information about the Settlement.  In addition, Settlement Class Members will be able to provide and update mailing addresses on the Settlement Website.  Settlement Class Members will be able to contact the Settlement Administrator and Class Counsel with any questions.

Defendants, through the Settlement Administrator, shall be responsible for timely compliance with all CAFA [Class Action Fairness Act] notice requirements.

*Id.* at 13-14 (citations to settlement agreement omitted).

The Settlement requires class members to release the following claims:

[A]ll claims, debts, controversies, losses, liabilities, liens, demands, promises, causes of action, class actions, suits, arbitrations, remedies, sanctions, rights, controversies, damages (including, but not limited to, actual, statutory, trebled, exemplary, or punitive), fees (including, but not limited to, attorneys' fees), expenses, costs, indebtedness, injunctive relief, judgments, and obligations of any kind or nature whatsoever, whether in law or in equity, whether known or unknown, fixed or contingent, claimed or unclaimed, direct or indirect, individual or representative, arising out of or relating to any telemarketing, solicitation, or other marketing or dissemination that was made by and/or on behalf of any of the Released Parties and/or promoting Released Parties' products or services, including the actual or alleged use of an automatic telephone dialing system or prerecorded voice, who did not consent to such call, or otherwise arising under the TCPA or similar federal or state laws governing such matters, and any rule or regulation thereunder, including without limitation the claims alleged in the Complaint.  This release specifically extends to claims that the Releasing Parties do not know or suspect to exist in their favor as of the date of the Final Approval and Judgment, which release is meant to and constitutes a waiver and relinquishment, without limitation, of Section 1542 of the California Civil Code. . . .

ECF No. 110-1 at 25-26.  Class members who wish to opt out of the Settlement must submit a

United States District Court
Northern District of California

1    Request for Exclusion to the Settlement Administrator "by the Objection/Exclusion Deadline,

2    ninety-one (91) days after entry of the Preliminary Approval Order or such other date specified in

3    the Court's Preliminary Approval Order." *Id.* at 39-40.  Class members who want to object to the

4    Settlement must "file [a] notice of objection or request to be heard with the Court . . . by no later

5    than the Objection/Exclusion Deadline" *Id.* at 42.  Any objection or request to be heard must be

6    mailed solely to the Court.  ECF No. 116 at 3.

7        Finally, the Settlement requires Defendants to work with the Settlement Administrator to

8    provide timely notice to attorneys general, as required under 28 U.S.C. § 1715.  Defendants have

9    satisfied these CAFA notice obligations.  ECF No. 113-1.

10       **C.     Analysis**

11       The Court will grant the motion for preliminary approval of class action settlement for the

12   reasons set forth below.

13                    **1.     Non-Collusive Negotiations**

14       Because the Settlement was reached prior to class certification, "there is an even greater

15   potential for a breach of fiduciary duty owed the class during settlement," and the Court must

16   examine the risk of collusion with "an even higher level of scrutiny for evidence of collusion or

17   other conflicts of interest." *In re Bluetooth*, 654 F.3d at 946.  Signs of collusion include: (1) a

18   disproportionate distribution of the settlement fund to counsel; (2) negotiation of a "clear sailing

19   provision"; and (3) an arrangement for funds not awarded to revert to defendant rather than to be

20   added to the settlement fund. *Id.* at 947.  If "multiple indicia of possible implicit collusion" are

21   present, a district court has a "special 'obligat[ion] to assure itself that the fees awarded in the

22   agreement were not unreasonably high.'" *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 965

23   (9th Cir. 2003)).

24       As to the first *Bluetooth* factor, the Ninth Circuit has set a "benchmark" fee award at 25%

25   of the recovery obtained for common fund settlements such as this one. *Six (6) Mexican Workers*

26   *v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  Class counsel intend to seek

27   $330,000.00 in attorneys' fees, which represents 30% of the total settlement fund.  ECF No. 109 at

28   12.  Although this is a departure from the benchmark, it is also significantly less than class

United States District Court
Northern District of California

counsel's current combined lodestar of $409,208.  ECF No. 110 ¶ 12.  Thus, for the purposes of evaluating collusive behavior, the Court finds that 30% is not a disproportionate amount.[3]

Second, when a settlement contains a clear sailing provision, "the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefits to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested."  *In re Bluetooth*, 654 F.2d at 948 (quoting *Staton*, 327 F.3d at 954).  In this case, the Settlement includes the following clear sailing provision:  "Defendants agree not to object to Class Counsel's Fee, Cost and Service Award Application if Class Counsel's request for attorneys' fees does not exceed . . . $330,000.00, plus costs of $20,000.00."  ECF No. 110-1 at 43.  However, a "'clear sailing' provision 'does not signal the possibility of collusion' where, as here, Class Counsel's fee will be awarded by the Court from the same common fund as the recovery to the class."  *In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509-LHK, 2015 WL 5158730, at *14 (N.D. Cal. Sep. 2, 2015) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009)).

Third, no amount in the Settlement fund will revert to Defendants.  ECF No. 110-1 at 24.  Any settlement checks that go uncashed will be distributed to the National Consumer Law Center.  *Id.*

After analyzing the *In re Bluetooth* factors, and considering that the Settlement was reached after the parties engaged in motion practice and participated in a full day of formal mediation, the Court concludes that the negotiations and agreement were non-collusive.

     **2.**    **Strength of Plaintiffs' Case; Risk, Expense, Complexity, and Likely Duration of Further Litigation; and Risk of Maintaining Class Status Throughout Trial**

The risk, expense, complexity, and likely duration of further litigation also weigh in favor of preliminary approval.  Although Cabiness and class counsel believe their allegations have merit, they also acknowledge that Defendants have raised factual and legal defenses that may

___

[3] Plaintiff's motion for attorneys' fees is not yet before the Court.  However, counsel are advised that the Court will follow the Ninth Circuit's instruction that only "special circumstances" justify a departure from the 25% benchmark.  *Six (6) Mexican Workers*, 904 F.2d at 1311.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   prevent recovery or class certification.  ECF No. 109 at 23.  Defendants continue to assert they

2   complied with the TCPA and also maintain they are not part of a single business enterprise.  *Id.* at

3   22-23.  Further, CDS is allegedly in "wind down" mode, which presents a risk that class members

4   would be unable to collect on a large judgment entered against CDS.  *Id.* at 23.  There appears to

5   be little risk that class status could not be maintained through trial.  However, if this case were to

6   proceed to trial, it would substantially prolong the wait class members face to obtain relief.

### 3.        Amount Offered in Settlement

8              To evaluate the adequacy of the settlement amount, "courts primarily consider plaintiffs'

9   expected recovery balanced against the value of the settlement offer."  *In re Tableware*, 484 F.

10  Supp. 2d at 1080.  But "[i]t is well-settled law that a cash settlement amounting to only a fraction

11  of the potential recovery does not per se render the settlement inadequate or unfair."  *Officers for*

12  *Justice*, 688 F.2d at 628.

13             If they were to prevail on their claims after litigation, class members would be entitled to

14  $500 of statutory damages per TCPA violation.  47 U.S.C. § 227(b)(3)(B).  The Settlement

15  provides for a payment of a small fraction of this amount – approximately $20.00 – to each class

16  member.  ECF No. 110-1 at 23.  However, all class members whose mailing addresses are

17  obtained by Defendants will receive a check in the mail without having to take any action on their

18  part.  *Id.*  This lack of an opt-in claims process ensures that the vast majority of the class will

19  receive compensation for their alleged harm and greatly weighs in favor of approval.  Although

20  other TCPA class action settlements approved in this district have provided higher payments to

21  each class member who received a payment, the claims rates in those cases were extremely low.

22  *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *5-6 (N.D. Cal. Apr. 15,

23  2015) ($151 for each class member who filed a claim, but only 1.9% of class filed a claim);

24  *Pimental v. Google Inc.*, No. 11-CV-02585-YGR, 2013 WL 12177158, at *3 (N.D. Cal. June 26,

25  2013) ($500 for each class member who filed a claim, but "only a small portion of the Settlement

26  Class is expected to file claims"); *Grannan v. Alliant Law Grp., P.C.*, No. C10-02803 HRL, 2012

27  WL 216522, at *4, *7 (N.D. Cal. Jan. 24, 2012) ($300-325 to each class member who filed a

28  claim, but only 1,986 out of 137,891 class members, or 1.44%, filed a claim).  Here, by contrast,

United States District Court
Northern District of California

somewhere between 81.6% and 96.66% of all class members are projected to receive a payment. Moreover, the payments in the cited cases were calculated at the final approval stage, and those courts granted preliminary approval when the number of claimants was unknown and the potential recovery per class member was much lower than the estimated $20.00 in this case.  In evaluating the reasonableness of the Settlement, the Court is also cognizant of CDS's current "wind down" status, which may diminish the value of any future judgment entered at trial.  ECF No. 109 at 23. Considering the settlement as a whole, and given the direct distribution process and the uncertainty surrounding the central Defendant, the Settlement amount is reasonable and favors approval.

### 4.      Extent of Discovery Completed and the State of the Proceedings

The Settlement is the product of "nearly two years of litigation, extensive motion practice, thorough discovery including multiple depositions, and the Parties' participation in an all-day mediation session before the Honorable Peter D. Lichtman (Ret.) of JAMS and subsequent discussions." *Id.* at 7.  The discovery process has permitted the parties to collect "sufficient information to make an informed decision about the Settlement." *In re Mego*, 213 F.3d at 459. This factor weighs in favor of preliminary approval.

### 5.      Experience and Views of Counsel

As noted earlier, class counsel have extensive experience in litigating class action and consumer protection cases.  ECF No. 110 ¶¶ 32-36; ECF No. 111 ¶¶ 4-19; ECF No. 116-2 ¶¶ 2-10. That they advocate in favor of this Settlement weighs in favor of its approval.[4]

### 6.      Reaction of Class Members to the Proposed Settlement

The Court will wait until the fairness hearing to determine the reaction of the class members to the Settlement.

---

[4] The Court considers this factor, as it must, but gives it little weight.  "[A]lthough a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement." *Principles of the Law of Aggregate Litigation* § 3.05 cmt. a (Am. Law. Inst. 2010).

1

### 7.     Preferential Treatment

2        Aside from a potential service award, Cabiness will receive the same relief as all other

3   class members.[5]  *See* ECF No. 110-1 at 23.  There is also no evidence or suggestion that any other

4   class member will receive preferential treatment under the Settlement.  This factor weighs in favor

5   of approval.

6

### 8.     The Presence of Obvious Deficiencies

7        Finally, the Court has reviewed the Settlement and did not find any obvious deficiencies.

8   To the extent any objector calls attention to any such deficiency, the Court will consider it at the

9   fairness hearing.

10  ## V.     NOTICE

11       The Court must separately evaluate the proposed notice procedure.  Under Federal Rule of

12  Civil Procedure 23(c)(2)(B), "the court must direct to class members the best notice that is

13  practicable under the circumstances, including individual notice to all members who can be

14  identified through reasonable effort."  The notice must state:

15                    (i) the nature of the action; (ii) the definition of the class certified;
                    (iii) the class claims, issues, or defenses; (iv) that a class member
16                    may enter an appearance through an attorney if the member so
                    desires; (v) that the court will exclude from the class any member
17                    who requests exclusion; (vi) the time and manner for requesting
                    exclusion; and (vii) the binding effect of a class judgment on
18                    members under Rule 23(c)(3).

19  Fed. R. Civ. P. 23(c)(2)(B).

20       Cabiness proposes sending class members a "Postcard Notice" via U.S. mail and a

21  "Long Form Notice" via email.  ECF No. 110-1 at 28.  For Postcard Notices that are

22  returned as undeliverable, the Settlement Administrator will use an address tracing process

23  through LexisNexis to obtain updated addresses.  ECF No. 116 at 2-3.  The Settlement

24  Administrator "will then re-mail all returned Notices to all updated addresses obtained

25  through the LexisNexis" tracing process.  *Id.* at 3.  The Long Form Notice will be

26  _____

27  [5] Cabiness intends to request a $10,000 service award, which is approximately 500 times the size
    of the average award for other class members.  ECF No. 109 at 11.  The Court is unlikely to
28  approve a service award that is so disproportionate to other class members' recovery in the
    absence of extraordinary circumstances.  *See Staton*, 327 F.3d at 975-77.

published on a website maintained by the Settlement Administrator.  ECF No. 110-1 at 29.  Both notices contain the required elements listed above.  *See id.* at 70-77 (Long Form Notice); ECF No. 116-1 at 5 (Postcard Notice).  The notices also direct class members to the website for additional information on the Settlement and will contain a toll-free number that class members can call if they have any questions.  ECF No. 110-1 at 72; ECF No. 116-1 at 5.  The notices adequately inform class members on how to object to the Settlement and how to attend the Fairness Hearing.  ECF No. 110-1 at 75-76; ECF No. 116-1 at 5.  Additionally, any objections to the Settlement must be mailed to the Court and will be filed as docket entries to provide notice to the parties.  ECF No. 116 at 3.  Both the Postcard Notice and the Long Form Notice "clearly and concisely state in plain, easily understood language" the key elements of the Settlement and the class members' rights under it.  Fed. R. Civ. P. 23(c)(2)(B).  The Court approves the notice procedure in the Settlement, as modified by the parties' supplemental briefing.

## CONCLUSION

Cabiness's motion for preliminary approval of class action settlement is granted, and the class is provisionally certified for settlement purposes.  The fairness hearing shall be held on November 15, 2018, at 2:00 p.m.  All other dates and deadlines shall be calculated pursuant to the terms of the Settlement.

**IT IS SO ORDERED.**

Dated:  June 25, 2018

_____
JON S. TIGAR
United States District Judge