UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINIFRED CABINESS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>EDUCATIONAL FINANCIAL SOLUTIONS, LLC, et al.,<br><br>　　　　Defendants. | Case No. 16-cv-01109-JST<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR SERVICE AWARD, ATTORNEYS' FEES, AND COSTS**<br><br>Re: ECF Nos. 118, 119 |

Before the Court are Plaintiff Winifred Cabiness's unopposed motions for final approval of class action settlement and for a service award, attorneys' fees, and costs. ECF Nos. 118, 119. The Court previously granted a motion for preliminary approval of the settlement. ECF No. 117. No class member has objected to the settlement, and only one class member has requested exclusion from the settlement class. ECF No. 119 at 6. The Court held a final fairness hearing on November 15, 2018, and will now grant both motions.

**I.　BACKGROUND**

**　　A.　Factual Background**

Plaintiff Winifred Cabiness brought this action on behalf of herself and similarly situated individuals pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227 *et seq*. ECF No. 88 ¶¶ 7, 31. Cabiness alleges that Defendants Educational Financial Services, LLC dba Campus Debt Solutions ("CDS"); Beta Investment Group, Inc.; Equity Acquisitions, LLC; Venturetech Solutions, LLC; Debt.Com, LLC; and Howard Dvorkin form a single business enterprise that "violated the TCPA by impermissibly placing calls to the cellular telephones of [Cabiness] and the members of the class using an ATDS [automatic telephone dialing system] or an artificial or prerecorded voice without their prior express written consent." *Id.* ¶¶ 9-20, 80.

Cabiness asserts that Defendants acquired a phone number previously used by the United States Department of Education ("DOE") to operate a call center for federally-backed student loan programs. *Id.* ¶ 42. This number was allegedly listed on the DOE's forms, website, and consumer account statements. *Id.* ¶¶ 42, 48. When class members called the number believing they were contacting the DOE, Defendants allegedly collected their telephone numbers and stored them in a database. *Id.* ¶ 46. Cabiness alleges that Defendants used these stored numbers to place calls with an ATDS to mislead class members into paying for student loan forgiveness and payment programs that were otherwise offered for free by the federal government. *Id.* ¶¶ 46-47.

### B. Procedural History

On March 4, 2016, Cabiness filed an individual complaint against CDS for violations of the TCPA pursuant to 47 U.S.C. § 227. *Id.* CDS filed a motion to dismiss and motion to stay, ECF No. 24, which the Court denied, ECF No. 50.

On September 23, 2016, Cabiness amended her complaint to include TCPA claims on behalf of a putative class. ECF No. 59. CDS again moved to dismiss or stay the action. ECF No. 60. The Court denied CDS's motions. ECF No. 50. Cabiness filed a second amended complaint on March 24, 2017, adding the remaining Defendants. ECF No. 88.

On June 5, 2017, the parties "attended a full-day mediation with the Honorable Peter D. Lichtman (Ret.) at JAMS," but were unable to finalize a settlement during the mediation. ECF No. 110 ¶ 24. The parties eventually resolved their disputes and Cabiness moved for preliminary approval of class action settlement on January 26, 2018. ECF No. 109. On June 25, 2018, the Court granted preliminary approval of the class action settlement. ECF No. 117. On September 7, 2018, Cabiness filed a motion for a service award, attorneys' fees, and costs. ECF No. 118. On October 11, 2018, Cabiness filed a motion for final approval of the settlement. ECF No. 119. The Court now considers both motions.

### C. The Proposed Settlement

The Settlement Agreement defines the class as:

> all persons in the Unites States and its Territories:
>
> (a) who received one or more telephone solicitation calls on their

2

cellular telephone advertising CDS' student loan consolidation and loan forgiveness services, made by or on behalf of CDS;

(b) using an automated telephone dialing system, or artificial or prerecorded voice;

(c) without providing prior express written consent to receive such phone calls;

(d) since October 16, 2013.

ECF No. 120 at 21.[1] Pursuant to the agreement, Defendants will create a settlement fund of $1,100,000.00, which will be used to pay administration costs, attorneys' costs and expenses, attorneys' fees, and Cabiness's service award. *Id*. at 26. The balance remaining in the settlement fund, an estimated $615,000, will be distributed to class members on a pro rata basis. *Id*. at 27. In return for accepting the settlement, class members have agreed to release Defendants from:

> all claims, debts, controversies, losses, liabilities, liens, demands, promises, causes of actions, class actions, suits, arbitrations, remedies, sanctions, rights, controversies, damages (including, but not limited to, actual, statutory, trebled, exemplary, or punitive), fees (including, but not limited to attorneys' fees), expenses, costs, indebtedness, injunctive relief, judgments, and obligations of any kind or nature whatsoever, whether in law or in equity, whether known or unknown, fixed or contingent, claimed or unclaimed, direct or indirect, individual or representative, arising out of or relating to any telemarketing, solicitation, or other marketing or dissemination that was made by and/or on behalf or any of the [Defendants] and/or promoting [Defendants'] products or services, including the actual or alleged use of an automatic telephone dialing system or prerecorded voice, who did not consent to such call, or otherwise arising under the TCPA or similar federal or state laws governing such matters, and any rule or regulation thereunder, including without limitation the claims alleged in the Complaint. . . .

*Id*. at 29-30. Any checks that are not cashed within 90 days after the date of issuance will be contributed to the National Consumer Law Center. ECF No. 120 at 28.

## II. FINAL APPROVAL OF SETTLEMENT

### A. Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class

---

[1] Excluded from the class are "(i) any trial judge that may preside over this Action; (ii) any of the Defendants; (iii) any of the Released Parties; (iv) Class Counsel and their employees; (v) the immediate family of any of the foregoing persons; and (vi) any person who has previously given a valid release of the claims asserted in the Action." ECF No. 120 at 21.

3

settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1025 (9th Cir. 1998). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id*. at 1026. In order to assess a settlement proposal, a District Court must balance a number of factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F. 3d 566, 575 (9th Cir. 2004). Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, the court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F. 3d 935, 946-47 (9th Cir. 2011).

**B.    Analysis**

**1.    Adequacy of Notice**

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F. 2d 615, 624 (9th Cir. 1982) (citation omitted).

The Court approved the parties' proposed notice procedures when it granted preliminary approval. ECF No. 117 at 14. Pursuant to those procedures, Heffler Claims Group, the settlement administrator, attempted to obtain mailing and email addresses for the 33,585 class members using a "reverse lookup" process based on Defendants' records. ECF No. 120 at 3. Heffler located mailing addresses for 18,975 class members, and timely mailed Court-approved postcard notices to those members on August 9, 2018. ECF No. 123 ¶¶ 8-11. Heffler also obtained 21,845 email addresses for class members and emailed Court-approved notices to those members, some of

4

United States District Court
Northern District of California

1  whom also received postcard notices. *Id.* ¶¶ 8, 11. There were 13,703 class members who
2  received only an email notice. *Id.* These notices informed class members that they could file a
3  request to be excluded from the class or an objection to the terms of the settlement by September
4  24, 2018. *Id.* ¶ 11.

Heffler also established a toll-free telephone number for class members to call with questions about the settlement, as well as a website providing information about the proposed settlement. *Id.* ¶¶ 12-13.

Heffler did not, however, timely comply with the notice plan's procedures for re-mailing the 2,104 postcard notices that were returned as undeliverable. *See id.* ¶ 14. The Court approved the parties' modified plan, which required Heffler to "'re-mail all returned Notices to all updated addresses obtained through the LexisNexis' tracing process." ECF No. 117 at 14 (quoting ECF No. 116 at 3). Heffler did obtain new addresses for 1,249 of the undeliverable notices, but it did not re-mail them until October 9, 2018, ECF No. 123 ¶ 14,[2] after the September 24, 2018 deadline by which class members were required to object to the settlement or exclude themselves from the class, *see* ECF No. 117 at 11.

Following the hearing, at the Court's invitation, Plaintiffs' counsel submitted a supplemental memorandum and declaration to address this notice issue. ECF Nos. 125, 126. Counsel explained that 865 of the 1,249 class members who were the subject of re-mailed notices had been given email notice with no bounce-back notification having been received. ECF No. 126 ¶ 2. Additionally, 97 of the 1,249 class members' notices were returned as undeliverable with no forwarding address, *id.*, such that date of the re-mailed notice was not significant. Finally, counsel noted that the re-mailed postcard notices went out on October 9, 2018, more than 35 days before the fairness hearing. *Id.* Thus, counsel argued, these class members received actual notice of the pendency of the action well in advance of the fairness hearing.

While the settlement administrator's error is regrettable, the Court concludes that

---

[2] In addition, Heffler received a forwarding address for 65 notices that were returned undeliverable. ECF No. 123 ¶ 14. Heffler re-mailed notices to 52 of these addresses on October 9, 2018. *Id.* Heffler does not indicate whether it re-mailed notices to the other 13 forwarding addresses, which were received after October 9, 2018. *Id.*

5

expending additional resources on the setting of another fairness hearing and redoing notice of the settlement is not in the interests of the class. First, the affected class members make up a small fraction of the overall class. The vast majority of the class received either first class mail or email notice within the schedule set by the Court's preliminary approval order. Second, many of the persons who received late re-mailed notice had already received notice by email. Finally, the few hundred class members who received only the re-mailed hard copy notice received it five weeks before the fairness hearing. While this Court would never approve in advance a structure giving an entire class the notice these few class members received, the Court notes that the Ninth Circuit has held due process is satisfied even when notice is mailed to some class members nine days before resolution of a case. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993) (rejecting argument that notice was "not the best practicable under the circumstances" under Rule 23(c)(2) and holding that timing of notice for class action settlement did not violate due process where notice was "mailed to some [class members] as late as February 11, 1992," which was five days after the "deadline for filing objections or opting out" and nine days before the settlement hearing).

Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Under these circumstances, the Court finds that the parties have provided adequate notice to class members.

### 2. Fairness, Adequacy, and Reasonableness

#### a. Strength of Plaintiff's Case and Risks of Litigation

Approval of a class settlement is appropriate when "there are significant barriers plaintiffs must overcome in making their case." *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Difficulties and risks in litigating weigh in favor of approving a class settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F. 3d 948, 966 (9th Cir. 2009).

Here, although Cabiness and Class Counsel believe they have a "winning case," ECF No. 119 at 15, they acknowledge – and the Court has previously found – that "Defendants have raised factual and legal defenses that may prevent recovery or class certification." ECF No. 117 at 12.

1    Cabiness would have to overcome Defendants' assertions that they complied with the TCPA and
2    that they are not part of a single business enterprise. ECF No. 119 at 15. Furthermore, after this
3    case was filed, CDS allegedly entered "wind down" mode due to its financial circumstances,
4    creating a risk that class members would be unable to collect a large judgment if it were entered
5    against CDS. *Id*. Because of the potential difficulty obtaining and enforcing a large judgment, the
6    Court finds that this factor weighs in favor of approval.

### b. Settlement Amount

"In assessing the consideration obtained by the class members in a class action settlement, 'it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting *Officers for Justice*, 688 F.2d at 628). "In this regard, it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id*. (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

Here, the settlement will provide class members with $615,000.00 in damages, excluding attorneys' fees, litigation expenses, and Cabiness's service award. ECF No. 119 at 9. Based on class member participation, each member's pro rata share will be $33.36. ECF No. 123 ¶ 19. If the class prevailed after litigation, each class member would be entitled to $500 of statutory damages per TCPA violation. 47 U.S.C. § 227(b)(3)(B). An average award of $33.36 thus represents payment for only a small fraction of the total possible recovery for TCPA violations. However, under this settlement, all class members whose addresses are obtained will receive a check in the mail without having to take any additional action. ECF No. 119 at 16. Because class members will not have to opt in, the majority of the class will receive compensation. Heffler has thus far obtained mailing addresses for 18,434 class members, or 55% of the class. ECF No. 123 ¶ 18. This high participation rate distinguishes this settlement from other TCPA cases where the approved settlement provided each class member with a greater recovery, but a significantly smaller percentage of eligible class members actually filed a claim and obtained any relief. *See Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *5-6 (N.D. Cal. Apr. 15,

7

2015) ($151 for each class member who filed a claim, but only 1.9% of class filed a claim); *Pimental v. Google Inc.*, No. 11-CV-02585-YGR, 2013 WL 12177158, at *3 (N.D. Cal. June 26, 2013) ($500 for each class member who filed a claim, but "only a small portion of the Settlement Class is expected to file claims"); *Grannan v. Alliant Law Grp., P.C.*, No. C10-02803 HRL, 2012 WL 216522, at *4, *7 (N.D. Cal. Jan. 24, 2012) ($300-325 to each class member who filed a claim, but only 1,986 out of 137,891 class members, or 1.44%, filed a claim). The Court concludes that recovery for the majority of class members weighs in favor of approval, especially in light of the difficulties that Cabiness would face should this case proceed to trial.

### c. Extent of Discovery

"In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *In re Mego*, 213 F. 3d at 459 (citations omitted). However, the extent of discovery completed supports approval of a proposed settlement, especially when litigation has "proceeded to a point at which both plaintiffs and defendants ha[ve] a clear view of the strengths and weaknesses of their cases." *McKee Foods*, 716 F. Supp. 2d at 851-52 (internal quotation marks omitted).

Here, the Court is persuaded that the parties conducted sufficient discovery to make an informed decision about the adequacy of the settlement. At the time of settlement, the parties had spent almost two years engaged in litigation, including dispositive motions, discovery, and depositions. ECF No. 119 at 17. *See In re Omnivision*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007) (finding the parties were sufficiently informed about the case prior to settling because they engaged in discovery, took depositions, briefed motions, and participated in mediation). This factor therefore weighs in favor of approval.

### d. Counsel's Experience

Here, Class Counsel have extensive experience litigating class action and consumer protection cases. ECF No. 110 ¶¶ 32-36; ECF No. 111 ¶¶ 4-19; ECF No. 116-2 ¶¶ 2-10. That

1 they advocate in favor of the settlement weighs in favor of approval.[3]

### e. Presence of Governmental Participant

There is no governmental participant in this case, so the Court need not consider this factor.

### f. Absence of Collusion

As explained in its prior Order, the Court finds that the negotiations and the resulting settlement were not collusive. ECF No. 117 at 11.

### g. Reaction of the Class

Finally, class members' positive reaction to a settlement weighs in favor of settlement approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision*, 559 F. Supp. 2d at 1043 (citation omitted).

Here, the reaction of the class was almost universally favorable. No class member has filed an objection to the settlement, and only one class member has chosen to opt out. ECF No. 119 at 18; ECF No. 123 ¶ 16. The Court therefore concludes this factor weighs in favor of approval. *See, e.g.*, *McKee Foods*, 716 F. Supp. 2d at 852 (finding that a 4.86% opt out rate strongly supported approval).

Balancing all the factors, the Court finds that they support granting final approval. Accordingly, the Court hereby finds that the settlement is fair, adequate, and reasonable, and grants Cabiness's motion for final approval of the Settlement.

## III. ATTORNEYS' FEES

### A. Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have

---

[3] The Court considers this factor but gives it little weight. "Although a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement." *Principles of the Law of Aggregate Litigation* § 3.05 cmt. a (2010).

already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *Id.* at 942. "Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id.* The Ninth Circuit has maintained a well-established "benchmark for an attorneys' fee award in a successful class action [at] twenty-five percent of the entire common fund." *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997). Courts in the Ninth Circuit generally start with the 25 percent benchmark and adjust upward or downward depending on:

> the extent to which class counsel "achieved exceptional results for the class," whether the case was risky for class counsel, whether counsel's performance "generated benefits beyond the cash . . . fund," the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-50 (9th Cir. 2002)).[4] In addition, courts often cross-check the amount of fees against the lodestar. "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. Regardless whether the court uses the lodestar or percentage approach, the main inquiry is whether the fee award is "reasonable in relation to what the plaintiffs recovered." *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

---

[4] In determining whether class counsel achieved "exceptional results," the Court bears in mind that, under the percentage of the common fund approach, "to some extent, counsel's success provides its own reward: the larger the total recovery, the larger counsel's fee award will be, all else being equal." *Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2018 WL 4030558, at *3 n.2 (N.D. Cal. Aug. 23, 2018). Nonetheless, it is appropriate to permit "some upward adjustment where the results achieved are significantly better than the norm." *Id.*

**B. Analysis**

Class Counsel move the Court for $330,000.00 in attorneys' fees, representing 30 percent of the $1.1 million settlement fund. ECF No. 118 at 5-6. Class Counsel argue that an award of 30 percent of the overall settlement fund is reasonable because they achieved an excellent result for the class, assumed a significant risk of no recovery, have excellent skill and quality of work, and took the case on a contingent basis. *Id*. at 10-13.

Although higher than the benchmark 25 percent, the Court finds that an award of 30 percent, which equates to $330,000.00, is reasonable given the results achieved here. In particular, Class Counsel obtained a settlement where class members will receive compensation through direct distribution without a mandatory claims process, resulting in relief to a far greater percentage of the class than in typical TCPA cases, as noted above.

Counsel's lodestar further confirms the reasonableness of a 30 percent fee award. Class Counsel spent 810.6 hours pursuing this action and claims a total lodestar of $435,022.50. *Id*. at 16. Class Counsel cite to other cases in this district where their billing rates have been approved, ECF No. 118-3 at 15-16, and cases where similar billing rates have been approved for similarly experienced partners, ECF No. 118 at 16-17. For the purposes of the lodestar cross-check, the Court finds that the billing rates and hours billed are reasonable.

An award of $330,000.00 represents only 76 percent of Class Counsel's claimed lodestar of $435,022.50. *Id*. at 16. This Court has previously found that an award exceeding 25 percent is reasonable where the total fee award is lower than the lodestar calculation. *See Bennett v. SimplexGrinnell LP*, No. 11-CV-01854-JST, 2015 WL 12932332, at *6 (N.D. Cal. Sept. 3, 2015) (citing *In re Bluetooth*, 654 F.3d at 944 (encouraging courts to cross-check award, rather than relying on formulaic calculations that may result in an unreasonable award); *Vizcaino*, 290 F.3d at 1051 n.6 (finding that most fee awards had a lodestar between 1-4 and a majority had a lodestar between 1.5-3). Here, the requested award would not "yield windfall profits for class counsel in light of the hours spent on the case." *In re Bluetooth*, 654 F.3d at 942.

The Court awards 30% of the common fund, or $330,000.00, in attorneys' fees.

## IV. COSTS

### A. Legal Standard

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted). To support an expense award, plaintiffs should file an itemized list of their expenses by category and the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable. *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), *supplemented*, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

### B. Analysis

Here, Class Counsel state that they have incurred $35,033.10 in costs, including research, courier service, and travel, and they provide a detailed list of those expenses. ECF No. 118-2 at 4; ECF No. 118-3 at 60-64. Class Counsel request reimbursement for $20,000.00 of its costs. ECF No. 118 at 18. The Court finds that the $20,000.00 cost request is reasonable and grants Class Counsel's request.

## V. SERVICE AWARD

### A. Legal Standard

"[Incentive] awards are discretionary and are intended to compensate class representatives for work done on behalf of the class . . . ." *Rodriguez*, 563 F.3d at 958 (internal citation omitted). The Court should consider:

> (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; (3) the duration of the litigation and the amount of time and effort the plaintiff expended in purs[uing] it; and (4) the risks to the plaintiff in commencing the litigation, including reasonable fears of workplace retaliation, personal difficulties, and financial risks.

*Wren*, 2011 WL 1230826, at *32 (citations omitted). Indeed, "courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013). Many courts in the Ninth Circuit have held that a $5,000 service award is "presumptively

reasonable." *See, e.g., In re Toys-R-Us Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 470-72 (C.D. Cal. 2014); *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that as a general matter, $5,000 is a reasonable amount").

### B. Analysis

Plaintiff Cabiness requests a $5,000 service award. ECF No. 118 at 18. Class Counsel state that Cabiness has "spent considerable time an effort in the prosecution of this action, which included multiple meetings and discussions with counsel, reviewing pleadings, responding to discovery and gathering the information required to respond, and reviewing the Settlement." *Id*. at 19. Cabiness estimates that she spent over 30 hours assisting with this case. ECF No. 118-1 ¶ 13. The Court agrees that the presumptively reasonable $5,000 service award is appropriate and grants the request.

## CONCLUSION

For the foregoing reasons, the Court hereby orders as follows:

1. The Court grants final approval of the proposed settlement agreement.
2. The Court makes final its certification of the class for the purposes of this settlement only.
3. The Court grants Class Counsel $330,000.00 in attorneys' fees.
4. The Court grants Class Counsel $20,000.00 in costs.
5. The Court grants Plaintiff Winifred Cabiness a service award of $5,000.00.
6. The class member who requested to opt out of the settlement is excluded from the class.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

7. The Court retains continuing jurisdiction over this settlement solely for the purposes of enforcing this agreement, addressing settlement administration matters, and addressing such post-judgment matters as may be appropriate under Court rules and applicable law.

**IT IS SO ORDERED.**

Dated: March 26, 2019



JON S. TIGAR
United States District Judge